THE PEOPLE OF THE STATE OF ILLINOIS, *ex relatione* George M. Billings, *v.* WILLIAM H. BISSELL, Governor of the State of Illinois.

MOTION FOR MANDAMUS.

The Supreme Court has no control over the Governor of the State to compel him to perform any public duty.

By the consent of the Governor, the court might adjudicate questions submitted to it; but it does not possess the right to exercise coercive powers over the Executive.

The People ex rel. *v*. Bissell.

THE relator, by his motion, asked the court to order that a writ of mandamus be issued, directed to the Governor, commanding him to issue to the relator new bonds of the State, for the arrears of interest due upon two certain bonds of the State of Illinois, described in an affidavit of the relator annexed to the motion, as the said Governor is required to do by an act of the General Assembly entitled "An act to fund the arrears of interest accrued and unpaid on the public debt of the State of Illinois;" approved Feb. 18, 1857.

The affidavit shows that the relator is the holder of two bonds, dated the 1st of May, 1841, and numbered 308 and 932, each for the sum of $1,000, and each having all the interest coupons, save one, attached thereto (appends a copy of the bond to his affidavit) ; that there was unpaid interest on said bonds on the 1st of January, 1857, amounting to $1,860; that the bonds, with coupons attached, were presented to the Governor in January, 1856, with a request that he should take up and discharge the arrears of interest due on said bonds, by issuing new bonds, in pursuance of the act above referred to ; that the Governor refused to comply with this request.

The motion was denied by the court.[*]

STUART & EDWARDS and LINCOLN & HERNDON, for the Relator.

S. T. LOGAN, for the Governor.

CATON, C. J.   This is an application filed by the relator, asking for an alternative writ of mandamus to be directed to the Governor, commanding him to issue to the relator certain interest bonds, or certificates, to which he claims to be entitled under the law of 1847, and presents the distinct question, whether this court will assume to itself jurisdiction to control the executive department of the government.   This is a grave question, and has been well considered by the court, and perhaps its importance would justify us in going more elaborately into its discussion than we now propose to do.   Properly considered, it reaches the very foundation principles upon which our government is based.   It is no less delicate than fundamentally important.   In quiet times like these, when there are no symptoms of jealousy felt by one department of the government towards another ; when there is no grasping after power by either department, for ulterior purposes ; when there is in each as much willingness to avoid responsibility as to usurp power—the mo-

---

[*] NOTE BY THE REPORTER.—The bonds referred to in this application, are a part of those known in this State as the McAllister & Stebbins bonds.

mentous importance of this question is apt to be lost sight of, for its decision, whichever way it is determined, would be likely to be quietly acquiesced in by all, without much discussion or criticism.

In other times, the question now so quietly considered, exciting no feeling, and so little remark, might severely test the very stability of our forms of government. Now, however, we may consider it the more impartially, if we will but consider it as maturely. Now, there is no danger that our judgments will be swayed by our feelings or passions, but the only danger is, that we may not sufficiently appreciate its importance, and thus pass over it too lightly.

Neither of the three great departments into which our government is, by the constitution, divided, is subordinate to, or may exercise any control over, another, except as is provided in the constitution. This normal condition is that of equality, each acting within its own sphere, independent of either of the others, so long as its action does not exceed the powers confided to it, unless particular exceptions are made to this general rule by the constitution itself. The harmonious working of these several departments, so as to accomplish one united and complete government, requires, as the constitution contemplates, that each department should, to a certain extent, control or restrain the others. For instance, the legislative department makes the law by which both the other departments are controlled and bound. The executive is authorized to exercise a control over both the others in certain cases, which is sometimes absolute and sometimes qualified. He has a qualified veto power upon legislative action, and has the absolute right to convene the legislature when he chooses, and, in a certain event, may adjourn their sessions; and should the legislature pass a law, in violation of the constitution, to borrow money, and require him to issue bonds therefor, he might refuse to issue the bonds or to execute the law. He may practically annul the judgments of the judiciary, in certain cases, by the exercise of the pardoning power. These instances serve to illustrate. To the judiciary is confided the power and the duty of interpreting the laws and the constitution whenever they are judicially presented for consideration. Hence it becomes our duty to determine what is the meaning of the laws passed by the legislature, and, also, whether those laws are such as the legislature was authorized by the constitution to pass. So, also, of the acts of the executive ; we are bound to determine whether such acts are authorized by the laws and the constitution, whenever they are brought before us judicially, but not otherwise. And hence the judicial department of the government exercises a certain controlling, or rather restraining,

power, over both the other departments of the government. Notwithstanding all this, when carefully considered, it will be seen that each department, within its proper constitutional sphere, acts independently of both the others, and restraint is only placed upon it when such sphere is actually transcended, or express authority is given by the constitution, for restraint or control, by another department. As from necessity and the very nature of all government, there must be an ultimatum somewhere, whose duty it is to determine whether such sphere has been passed or not; that duty, in most cases, falls on the judicial department, from the fact that in this department is reposed the responsibility of enforcing or giving effect to the acts of the other departments. But it is only when thus called upon, in some form known to the law, to give effect to such acts of the other departments, that the judiciary can determine whether such acts were done in the exercise of a constitutional power. In no other way, nor in any other case, can this department construe the constitution for, or exercise any control over, any other department. Where final action upon any subject is confided to either of the other departments, there the responsibility must rest, of conforming such action to the law and the constitution.

It is because such final action is generally devolved upon the judiciary, that the judiciary is most frequently called upon to give a final and conclusive construction to the constitution and laws. It results, therefore, from this philosophical arrangement of our governmental system, that the control which the judicial department exercises over the others, is of a restraining, and not of a compulsory power. But this is only practically, and not literally so. We may not enjoin the others from doing an unconstitutional act, but by refusing to give effect to such act, or relieving against it, when properly and judicially applied to for that purpose, we may restrain them. We cannot restrain the Governor from issuing the bonds of the State, contrary to law, but when the question is properly presented before us, we can declare such bonds void; and so of a patent for the public land, which he might issue. And so, if he should step beyond his constitutional sphere, and unlawfully imprison a party, we could discharge such party on *habeas corpus.* But we have no power to compel either of the other departments of the government to perform any duty which the constitution or the law may impose upon them, no matter how palpable such duty may be, any more than either of those departments may compel us to perform our duties. The Governor is, and must be, as independent of us as is the legislature, or as we are of either of them. The constitution may impose the duty upon the legisla-

ture to pass general laws for the incorporation of railroad or other companies, or to pass a law to prohibit free negroes from coming into the State, but if it neglects or refuses to do so, the responsibility is with the legislature alone, and no man would think of asking the courts to compel them to do so. But it may be said, that, in the case supposed, the wrong done, is to the public and not to an individual. We apprehend that there can be no question, that the courts would be equally powerless to compel them to pass a private act, for the benefit of an individual, no matter how clearly the duty might be enjoined by the constitution. So far as the question of power or jurisdiction is concerned, there can be no difference, whether the act, or omission, may affect one or many—whether it may be prejudicial to the rights of an individual or the whole community. What difference, whether the executive act required by law be to order an election, or appoint an officer, or issue a bond? Upon the Governor alone must the responsibility rest, of acting, or refusing to act.

It is urged upon us, that in a government of laws there must be an adequate remedy for every wrong, and that where a clear right exists, there must be some mode of enforcing that right. While human society is governed by so imperfect a being as man, this can be true only in theory. If we are to compel the Governor or the legislature to right every wrong which may arise from their omissions of duty, then surely they must, in order to make this Utopian system perfect, have the power to compel us to do right in every case. May it not be as well supposed that we will act perversely, and refuse to perform a duty imposed upon us, to the injury of the citizen, as that the Governor will do so? In the formation of the government, equal confidence was rightfully reposed in each department, to which appropriate and independent duties were assigned. If we unintentionally err, and do a party never so great a wrong, there is, and, from the nature of our institutions, can be no remedy. If we perversely or corruptly do an intentional wrong, the constitution has provided the only remedy, which is by impeachment; and so of the executive. When acting within the limits assigned to each, neither can control or dictate to the other. The presumption is, that one is as likely to be right, or as liable to err, as the other. See *Georgia* v. *Town*, 8 Ga. R., and *Hawkins* v. *The Governor*, 1 Ark. R. 570.

We were referred to a class of cases in support of this motion, to which it is proper to advert before concluding what we have to say on this subject. That is, where the Governor of a State, for the purpose of getting the advice of the Supreme Court in reference to some duty imposed upon him by law, has

made an agreed case, and voluntarily submitted to the jurisdiction of the court. Such was the case of *The People ex rel.* v. *Matteson*, 17 Ill. R. 167. In that case this court claimed no right to exercise its coercive jurisdiction over the executive. He came in voluntarily, and submitted to the jurisdiction of the court, for the purpose of giving us the formal right to consider, in order that we might express a judicial opinion, upon a question upon which he was required to act. In the opinion, after stating the case, the court said: "And we are asked by them (the relators) and the executive to decide whether those votes should be counted for the relators for the office to be filled at that election." The courts may acquire jurisdiction of the person by consent where they could acquire it in no other mode. A sovereign State may not be compelled to appear in court and answer any complaint against it, but if it voluntarily appear in court and submit to its jurisdiction, it is as much bound by the adjudication as an individual. Such was also the case of *The Pacific Railroad Company* v. *The Governor*, 23 Mo. R. 353. But even if a case should be found where the judicial department has assumed the right to bring before it, and exercise a coercive control over either of the other coördinate departments of the government, we should not feel authorized to follow it. In the case of *Webster* v. *French*, 11 Ill. R. 254, we did not in any way claim the right to exercise any control over the Governor in the discharge of his executive functions, but expressly repudiated such claim. The question there involved was one of right of property between individuals, and no executive act remained to be done to invest the party entitled to the right with the evidence thereof.

The application must be refused.

*Application denied.*

*Separate Opinion, by* Breese, J. The executive has certain duties imposed upon him by the constitution and the laws of the State. Should he fail to perform them, without justifiable reasons therefor, and the public be injured, impeachment and deprivation of office would follow.

This court has no control over him to compel him to perform any public duty. In his sphere, he is independent of the court. Should he consent to appear, asking our opinion on a point of duty, it would be readily given. We cannot compel him to appear, and no order we might issue for such purpose could be available should he resist. In matters of public duty, we remit him to the high tribunals of his own conscience and the public judgment.