People ex rel., Appellant, v. Fred A. Busse, as Mayor, et al., Appellees.
Gen. No. 13,820.

1. MANDAMUS—*when peremptory writ not awarded against mayor*. A peremptory writ of *mandamus* will not be awarded, at the instance of a private citizen, to compel the mayor of a city to enforce Sunday closing saloon laws.

2. MANDAMUS—*what admitted by pleadings.* In *mandamus* the rule is exactly the reverse of that which prevails in equity, and everything not explicitly denied is admitted.

3. MANDAMUS—*propriety of motion to strike immaterial matter.* A motion to strike irrelevant matter from a petition for *mandamus* is the appropriate method of testing the materiality and pertinency of allegations, but such a motion is not a substitute for a demurrer and is not intended or adapted to test the substantial rights of the parties.

4. MANDAMUS—*when lies against executive municipal officer.* *Mandamus* lies to compel an executive municipal officer to perform his ministerial duties, but a peremptory writ will not be awarded where it would interfere with the exercise by him of his discretionary powers, nor will it be awarded "to control and regulate the general course of official conduct."

Mandamus. Appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed May 18, 1908.

CHURCH, McMURDY & SHERMAN and WALTER J. MILLER, for appellant.

MAYER, MEYER & AUSTRIAN, for appellees; LEVY MAYER and EDWARD J. BRUNDAGE, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

We are asked in this appeal to reverse a judgment of the Superior Court of Cook county which dismissed a petition for *mandamus*. There were two defendants to the petition. One of them answered and the other demurred. The same order which dismissed the petition sustained the demurrer of one defendant to the petition and overruled a demurrer of the petitioners to the answer of the other. Thereupon the petitioners, in open court, elected to stand by the petition and by their demurrer to the said answer, and the petition was dismissed.

The petition was in the name of the People of the State of Illinois on the relation of William A. Bartlett, A. Lincoln Shute and Robert J. Bennett, and was filed December 21, 1906.

The *mandamus* which was prayed for was against Edward F. Dunne as mayor of the city of Chicago, and his successors in office, and was to "command him and them without delay and by the use (so far as may be necessary for the purpose) of every means, power and authority in that behalf conferred upon the mayor of said city by the laws of this state, or the ordinances of the city of Chicago, to proceed and thenceforth to continue to enforce *against Michael Kenna as the proprietor of saloons at numbers 279 and 300 South Clark street in said city of Chicago* the statute of this state prohibiting the keeping open the first day of the week, called Sunday, of tippling houses and other places where liquor is sold or given away (commonly called the Sunday closing law), *by closing or compelling him to close and keep the same closed on each and every Sunday thereafter,* and in case of his refusal to obey the law in that behalf, to procure *his* prosecution therefor, and to punish such violation of said law by the revocation of *his* licenses."

The petition says: "Because of the interest of said Michael Kenna in the event of this proceeding, he is made a party defendant thereto."

Summons issued and was served on Mayor Dunne and Kenna.

January 2, 1906, the respondents joined in a motion to strike from the petition certain portions of it, on the ground that they were, respectively, mere allegations of evidence or evidentiary facts, or of conclusions of law, and were all irrelevant, immaterial, surplusage and impertinent. This motion was sustained as to all the portions of the petition included and described in it, and those portions of the petition were stricken out. To this ruling the petitioners excepted, and it is assigned in this court as error.

By the same order by which matter was stricken from the petition for *mandamus,* the defendants were ruled to plead, answer or demur to said petition.

February 13, 1907, the defendant Kenna filed a gen-

eral and special demurrer to the petition, the special cause of demurrer stated being that for various reasons "the said law of the State of Illinois called in the petition and known as the 'Sunday closing law,' and also known as section 259 of chapter 38 of the Revised Statutes of the State of Illinois of 1874, was not in force at the time of the beginning of this action, and is not now in force in said city of Chicago." The said law, it is claimed by said assigned special causes, is repealed as to the city of Chicago, and is also repugnant to the constitution of Illinois and the constitution of the United States.

The general demurrer raises, however, the question of the right of the petitioners to a *mandamus,* upon the assumption of the existence and validity of the law described.

Edward F. Dunne, as mayor of the city of Chicago, answered the petition on February 13, 1907. In this answer he admits, "for the purpose of the answer only," that Kenna "has kept open his saloons and sold and dispensed intoxicating liquors therein upon Sundays, and intends to continue in the future to keep open his said saloons, and to sell and dispense intoxicating liquors therein, upon every Sunday while his licenses are in force," but "denies" that said keeping open of these saloons "has been with the knowledge and consent" of the said answering defendant, the mayor.

The answer avers that "while this defendant has been mayor of the city he has enforced and during his entire term of office intends to enforce every law that is in force in said city, to the best of his ability and power and to the extent that the forces at his command will enable him so to do."

The answer of the mayor further avers "that if said Sunday closing law is in force in said city as alleged in said petition, it is and would be a physical impossibility for this defendant to have personal knowledge of or to personally investigate and ascer-

tain the facts in each case and judge of the sufficiency thereof; that this defendant is not empowered to revoke the license of any saloon or dram-shop for an alleged violation of said Sunday closing law, unless the evidence of such violation, if there be any such violation, is clear and satisfactory to him.''

Also that: ''There are now pending in the Circuit and Superior Courts of the county at least forty-five petitions for *mandamus* instituted on or since December 21, 1906, against this defendant, to compel him to close up and revoke the licenses of at least thirty-one saloons or dram-shops and fourteen theaters because of alleged violation of said Sunday closing law, and that very many more similar proceedings are threatened to be instituted against him.''

And that: ''The revocation of a saloon or dram-shop license in said city, and the determination of whether or not the saloon or dram-shop keeper has violated the law, are matters which rest wholly within the official discretion of this defendant.''

Therefore, the answer concludes, ''This defendant claims and insists that this honorable court should not take or exercise jurisdiction to adjudicate the matters set forth in said petition, and should not grant a writ of *mandamus* as prayed for in said petition.''

The portions of the answer not above quoted are practically an argument in support of an averment made therein: ''That said Sunday closing law is not now and never has been in force or effect in said city of Chicago since its incorporation in 1875, under chapter 24 of the Revised Statutes of Illinois of 1874, known as An Act to provide for the incorporation of cities and villages.''

As under our view of the matter the question thus raised is immaterial, it is unnecessary to set out the allegations of the answer which form the premises for this conclusion.

To this answer of the mayor the petitioners demurred generally, and this demurrer was argued be-

fore the Superior Court with the demurrer of Kenna
to the petition. The result has been before indicated.
The trial judge, in his opinion, which has been brought
to our attention by the counsel for the petitioners, ex-
pressed his belief that the "Sunday closing law" was
in full force and effect within the limits of the city
of Chicago, but held that the executive of the city
could not properly be controlled or directed by the
*mandamus* of the court in the performance of executive
functions in the general exercise of the police power
entrusted to him.

We agree with the learned trial judge in this hold-
ing, as to the power and duty of courts in their rela-
tion to executive officers, and this renders it unneces-
sary for us to consider the question of the relations of
the "Sunday Closing" or "Tippling House" Act to
other legislation of the state, which the respondents
present to us. We shall assume that the statute of
Illinois relied on by the petitioners is in force in the
city of Chicago, and that this application for a *man-
damus* therefore was by persons interested only as
any other members of the community are interested
in the enforcement of the laws, for an order from the
Superior Court of Cook county to the mayor of the
city of Chicago to take cognizance of a particular
violation in said city of a law of the state, and, in
the language of the petition, "without delay * * *
by the use * * * of every means, power and author-
ity * * * conferred upon him by the law of the
state or the ordinances of the city * * * to enforce
against the violator that law * * * and in case of
his refusal to obey the law * * * to secure his pros-
ecution therefor, and to punish him by the revocation
of his licenses."

Our view as to the law of Illinois on the relations
of the judicial to the executive and legislative branches
of government, and on the functions and duties of
courts in general in the exercise of their extraordinary
powers, are so clearly defined and so coincident with

those of the learned trial judge who dismissed this petition, as expressed in his opinion, that it is hardly worth the while to stop to consider his action, which is assigned for error, in entertaining and allowing a motion to strike out alleged immaterial and improper matter from the petition. We do not think the reasoning of the court below—with which we concur—or our view of the questions would have been affected by the retention of all the matter excluded. If this is so, it is manifest that if the granting of the motion to strike were error, it was not prejudicial error.

But it seems due to the trial judge to say that, in our opinion, he was acting within the limits of his discretion and power in so ruling.

*Mandamus* is a common law proceeding, in which the ordinary course of common law pleading, beginning with pleas to the answer, follows the petition and answer. The petition and answer, too, while statutory substitutes for the alternative writ and return under the common law and the Statute of 9th Anne, are still so far common law pleadings that a rule exactly the reverse of that governing in equity prevails, and everything not explicitly denied is held admitted. People v. Crabb, 156 Ill. 155-165; Mayor v. Briggs, 194 Ill. 437. Under the operation of this rule the defendant to a petition, if he has decided to answer it, is naturally unwilling to pass by as immaterial some allegation of fact which he knows to be unfounded, at the risk, as the case develops, of having it considered by a court which disagrees with him as not only material but controlling. But if he answers and denies in detail improper and immaterial matter in the petition, instead of the result being, as the result of common law pleading should be, the narrowing of the dispute to single and controlling issues. (Hereford v. Crow, 3 Scam. 423), it will be the expansion of it to an interminable and intolerable number of issues, each one by itself inconclusive and uncontrolling. It is this that will always render a motion to expunge inartificial,

irrelevant and evidentiary matter from a petition for *mandamus*—more appealing to the justice and discretion of a trial judge than a similar motion in chancery proceedings or in stricter common law pleadings. Such a motion is not intended nor adapted to test the substantial rights of the parties or to take the place of a demurrer—Whitney v. Cady, 71 Conn. 166—but it is a proper method of testing the mere irrelevancy or the merely evidentiary character of allegations in the petition.

In the present case we think the motion was not improperly made or allowed. It was desirable and necessary to hold the pleadings which might follow the petition within reasonable limits, and no other way than the elimination of unnecessary and purely extraneous matter from the original petitions would have been effective to that end.

As the cause was disposed of on the demurrer of one defendant to the petition and the demurrer of the petitioners to the answer of the other defendant, and the ground on which it was so dismissed, in which we concur, would apply with equal force if the original petition had never been modified, the question whether the order of expurgation, which is complained of, was erroneous, is of no practical significance in this appeal, save possibly in one aspect.

The petition which was answered by Edward F. Dunne as mayor was the petition modified by the order of the Superior Court. As it was on his motion, over the objection of the petitioners, that the modifying excision was made, his position in this appeal might be treated, if the modification were erroneous, as though the answer which he filed were to the original petition, without excision, and thus admitted everything in the petition not denied by it. But pending this appeal, on the motion of petitioners and over the objection of the counsel for the original appellees, this court allowed the substitution of Fred A. Busse as "one of the appellees" in said cause, on the ground

that he had succeeded Dunne as mayor of Chicago.
Mr. Busse consented thereto, and the substitution was
based on section 8 of the *Mandamus* Act. It was urged
by counsel for the petitioners in oral argument before
us that Mr. Busse's position and liabilities were by
this substitution and the fact that he had not repu-
diated or modified anything appearing in the record
as the utterance or act of Mr. Dunne, identical with
those of his predecessor. Whatever force there may
be in this argument does not render it valid to hold
Mr. Busse to the admission of any averments in the
petition which were stricken out before the answer
which he is supposed to have adopted was filed. How-
ever, as the order of excision was, in our opinion, not
erroneous, but justifiable, this consideration is not of
practical importance.

As we have indicated, our opinion on the question
whether the Superior Court has the power and duty
of coercing and controlling the mayor in the perform-
ance of executive police duties and in the enforcement
of the criminal law, by judgments in *mandamus* pro-
ceedings at the instance and on the complaint of citi-
zens and taxpayers, interested in no other way than
as every law-abiding citizen is interested in such per-
formance and enforcement, is decided. To hold that
such power and duty existed would be, in effect, to
turn over the supervision of executive functions to
the courts and to confuse all the distinctions and bal-
ance of powers supposed to be an admirable charac-
teristic of our system of government. The inconve-
nience of recognizing and enforcing such a right would
be enormous.

The scope of the necessary discussion in the presen:
case is for us much lessened by the action and opinion
of the Supreme Court on a petition for *mandamus*
sought to be filed in that court by the same relators
against the mayor alone. In that case, The People v.
Dunne, 219 Ill. 346, the prayer of the petition was
that the court should issue the writ of *mandamus* to

the defendant, commanding him without delay and by the use (so far as might be necessary for the purpose) of every means, power and authority in that behalf conferred upon the mayor of said city by the laws of this state or the ordinances of the city of Chicago, to proceed and thenceforth to continue to enforce, *within said city,* the statute of this state prohibiting the keeping open upon the first day of the week, called Sunday, of tippling houses and other places where liquor is sold or given away, *and to compel the general observance of the provisions of said law in said city* on each and every Sunday thereafter *by every person* violating the law in said city, and to punish *all violations of said law by licensed dram-shop keepers in said city* by the revocation of *their* licenses, *and generally and at all times to take care that said law is faithfully executed in said city."*

As it is necessary under the practice in the Supreme Court to secure leave to file a petition in *mandamus* before actually filing it, this petition was presented with a motion for such leave. The leave was denied by the court and an opinion handed down in explanation. The court said: "The writ has never been made use of, and does not lie, in this state at least, for the purpose of enforcing the performance of duties generally. It will not lie where the court would have to control and regulate a general course of official conduct and enforce the performance of official duties generally. In such a case the court could not prescribe the particular act to be performed and enforce its performance. It is plain that in this case, where the court is asked to require the defendant to adopt a course of official action, although it is a course required by the statute and imposed upon him by the law, it would be necessary for the court to supervise generally his official conduct and to determine in very numerous instances whether he had persistently and to the extent of his power and the force in his hands carried out the mandate of the court and performed

his official duty. It is manifest that where there are about seven thousand saloons in a city which are kept open on the Sabbath day in violation of law, as is alleged in this case, the court would not only have to enforce a general course of official conduct on the part of the mayor, but must also determine in numerous instances whether ground existed for the revocation of licenses, whether there had been violations of law, and to what extent he had endeavored to perform his duty with the force and facilities at his command for doing it. The writ will not lie for any such purpose. For the court to assume the management of municipal affairs in the city of Chicago would be to depart from its proper sphere and assume governmental functions which are outside of the jurisdiction of the courts and not within the remedy by writ of *mandamus.*"

The Supreme Court does not, by this reasoning or by anything else in its opinion, indicate that it refused its permission to file the petition, in the exercise of the discretion which frequently has led it to refuse to entertain *mandamus* petitions (in which the *nisi prius* courts have concurrent original jurisdiction) because they were not of public or state-wide interest. Its opinion is placed upon the grounds which, when declared by the Supreme Court, are binding rules for all lower courts in the state.

The decision makes no such distinction as is suggested by counsel for the petitioners, between the impropriety or wrongfulness of issuing the writ against a president or governor and the impropriety or wrongfulness of issuing it against any other executive officer of inferior grade charged with the enforcement of general laws in a particular locality or jurisdiction.

The tests which are indicated are not the grade but the character of the office, to coerce the incumbent of which the suit is brought, and the quality and nature of the acts to which it is attempted to coerce him.

In view of this position taken by our own court

of last resort, it is unnecessary to discuss cases from other states cited to us, which apparently make distinctions resting upon the grade rather than the character of the executive officer and lend color to the theory that in a municipality executive police authorities may be supervised and controlled by *mandamus* which in the state or nation would be exempt from such interference.

The present petition must be taken from the purview of the doctrine laid down by our Supreme Court in the People v. Dunne, or its action in that case is binding on us as a precedent for this.

The petitioners insist that the necessary distinction is found in the difference in the prayers of the two petitions. The one which the Supreme Court denied permission to file asked that the mayor should be coerced ''to proceed and thenceforth to continue to enforce within said city'' the Sunday closing law, ''and to compel the general observance of the provisions of said law in said city by every person,'' and ''to punish all violations of said law by licensed dramshop keepers in said city by the revocation of their licenses, and generally and at all times to take care that said law is faithfully executed in said city''; whereas the one at bar is much more limited in its scope. It asks only that the mayor shall be coerced ''to proceed and thenceforth to continue to enforce against Michael Kenna, as proprietor of saloons at numbers 279 and 300 South Clark street in said city of Chicago'' the said law, ''by closing or compelling him to close and keep the same closed on each and every Sunday thereafter, and in case of his refusal to obey the law in that behalf, to secure his prosecution therefor and to punish such violation of said law by the revocation of his license.''

We have by italics in our statement of the case included in this opinion indicated the allegations and prayers of the two petitions which substantially differ.

The counsel for the petitioners is justified in insist-

ing that the difference is marked and that the petition passed on by the Supreme Court had a far wider scope and called for a more general supervision and control by the court of the mayor in the enforcement of the law than the one at bar. The first was a prayer for a direction that he should exert all his executive police power against all the offenders in Chicago against a certain statute, and the latter against only one offending in two places.

The court below pointed out, however, and we do not think that, as counsel insist, the statement was unwarranted, that it was clear that the real purpose of the present proceeding is "to compel the exercise of a general duty within the general exercise of the police power."

Perhaps the language which, over the protest of the petitioners, was stricken out of the petition, which asserts that the interest of the relators is to secure the observance of and obedience to the Sunday closing law by all tippling houses, and the general statements regarding the bad effect of the neglect to enforce such obedience, show this more distinctly than that which remains, but even in the expurgated petition the purpose and intent of the proceeding is shown by its recital of the visits of citizens and delegations to the mayor requesting him to enforce the law generally, and his refusal to do so. And the answer of the defendant Dunne, which was demurred to, asserts that there are at least forty-five petitions for *mandamus* pending against him, based on his alleged neglect to enforce the Sunday closing law, and many more threatened. But this is really beside the question, we think, because, quite apart from the apparent and, if this present proceeding is well advised, proper intention to proceed by separate petitions for the enforcement of the law in individual cases until the general result aimed at in the petition presented to the Supreme Court is effected by aggregation, and quite apart from the fact that if this were not in effect the intention of the peti-

People v. Busse.

tioners, but the proceeding was brought with the intention to compel the enforcement of the law against and the punishment of one offender only, leaving the other offenders to profit by the alleged expressed refusal of the mayor to enforce the Sunday closing law generally, it would not appeal to the judicial discretion which in any event governs the issuance or withholding of a *mandamus,* we cannot hold that in essential character there is a difference between the acts which the *mandamus* here prayed for would command, and those which the *mandamus* asked from the Supreme Court would direct.

While the scope and number of the acts are very different, they are in neither case "specific," nor especially are they "such that the court can supervise the performance of the duty and the execution of the mandate." People v. Dunne (*supra*). On the other hand, in either case, "the court would have to control and regulate a general course of official conduct." "It would be necessary for the court to supervise generally his (the mayor's) official conduct, and to determine whether he had persistently and to the extent of his power and the force in his hands carried out the mandate of the court and performed his official duty." Thus, although, by the petition here involved a *mandamus* is asked on the mayor only to enforce the law against two dram-shops instead of seven thousand, it is asked to compel the enforcement continuously and consistently and by every means in the power of the mayor. The mayor is to be directed "to close," or compel Kenna to close, the two places "on each and every Sunday thereafter," and whenever Kenna refuses to obey the law, to secure his prosecution, as well as to revoke his licenses. What is this but "to control and regulate a general course of official conduct"? It is none the less, in our opinion, a general course of conduct because directed against one man and two places, than if it were directed against many men and many places.

The opinion and decision, therefore, of the Supreme
Court in The People v. Dunne we regard as control-
ling us in this cause. As we so hold, it becomes of
little importance what we might otherwise think of
the questions of law involved. Nevertheless it will
not be out of place to express our independent con-
currence with the views of the Supreme Court, which
seem to us also those expressed in another form by the
court below in the case at bar. They are, as we be-
lieve, in accordance with the best authority everywhere
and in accordance with the political theories of the
distribution of powers in our form of government.

The true test to be applied when a *mandamus* on an
executive municipal officer is asked for the act to be
commended seems required by the law, is: Is the act
merely ministerial?

In a very late case—*Ex Parte* Young, 57 Lawyers
Edition U. S. Supreme Ct. Reports, p. 441—the Su-
preme Court of the United States says: "There is
no doubt that the court cannot control the exercise of
a discretion of an officer. It can only direct affirma-
tive action where the officer, having some duty to per-
form not involving discretion, but merely ministerial
in its nature, refuses or neglects to take such action.
In that case the court can direct the defendant to
perform this merely ministerial duty."

Undoubtedly courts have differed widely as to what
constitutes "a mere ministerial duty," but the best
authority at least, and certainly that of the Supreme
Court of the United States, is to the effect "that the
writ should not be used to interfere with the executive
officers of the government in the exercise of their ordi-
nary official duties." Merrill on *Mandamus*, sec. 31.
Such is the duty of the mayor of a municipality to
see to the enforcement of the criminal law. There is
in such exercise of ordinary official duties at least a
discretion in the methods in which and the occasions
on which the officers should go about them. The duty
may be clear, and yet the means of performing it dis-

cretionary and various and dependent on concurrent and conflicting factors. As Mr. Justice Clifford, speaking for the Supreme Court of the United States in The Secretary v. McGarrahan, 9 Wallace, 298-312, expressed it: ''Though *mandamus* may sometimes lie against an executive officer to compel him to perform a mere ministerial act required of him by law, yet such an officer, to whom public duties are confided by law, is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as part of his official functions.''

''In matters of public duty,'' Judge Breese said in The People v. Bissell, 19 Ill. 229, ''we remit'' the executive ''to the high tribunals of his own conscience and the public judgment.'' There is, besides, statutory punishment in Illinois, as the court below points out, for official misfeasance or neglect of duty.

Nor is the reasoning of Judge Clifford and of Judge Caton and of Judge Breese in the two cases last named less convincing for us because in these cases it was a cabinet minister and a governor respectively who were to be coerced in their public executive duties, while in this case it is the mayor of a city. This difference is not fundamental or essential. They are all executive, as distinguished from judicial or legislative officers, and the rules laid down by Chief Justice Marshall in Marbury v. Madison, 1 Cranch 137-171, ''It is not by the office of the person to whom the writ is directed, but by the nature of the thing to be done, that the propriety or impropriety of issuing a *mandamus* is to be determined''; and ''The province of the court is solely to decide on the rights of individuals, not to inquire how the executive or executive officers perform duties in which they have a discretion,'' have never been departed from by the court which we deem of highest authority.

The judgment of the Superior Court is affirmed.

*Affirmed.*