Supreme Court, April 6, 1937.
To Certain Members of the House of Representatives in the General Assembly:
We have received a communication in writing from the following members of the house of representatives in the general assembly, viz.: Harry F. Curvin, Francis X. Asselin, Joseph F. McVay, Richard Herrick, Frank P. Trainor, Nelson F. Duphiney, Napoleon J. Maynard, Louis J. Lussier, *Page 52 
Edgar E. Maynard, Harold A. Duxbury, Patrick B. McCaughey, Henry E. Fowler, Hugo A. Clason, Joseph R. Libby, George Whitwam, William MacLeod, Clara A. Smith, Marion F. Yatman, Howard S. Proctor, Michael J. Kilroy, Harold I. Huey, Leonard H. Sylvia, Martin Dolan, William B. Anthony, Vincenzo R. Senerchia, John F. Datson, Herman F. Holman, David A. Brown, Samuel H. Ramsay, J. Henry Manning, Robert M. Brayton, William G. Lind, Mark Tordoff, Jr., Linus E. Dodge, A. Lloyd Briggs, John H. Potter, Gilbert T. Rodman, Edwin C. Whitford, Henry D. Hoyle, William E. Sarle, W.A. Henry, Wilbur A. Scott, Frank E. Ballou, James D. Halliday, John J. Gregory, George E. Tucker, Richard D. Windsor, Frank E. Hopkins, Robert Mulligan, Frederick W. Garrity, Albert G. Winward, and Paul Q. Weicker.
This communication is in the form of a petition signed and sworn to by the above members of the house, who constitute a majority of all of the elected members of that house. It alleges, substantially, facts to show that certain legislative and constitutional rights of the majority of the house have been denied them by the presiding officer thereof; that the presiding officer, by his arbitrary, unwarranted and unconstitutional conduct, has prevented the majority of the house from functioning as the house and especially from taking suitable action to obtain from the justices of this court an advisory opinion upon certain questions of law. These members therefore seek, by means of this petition, to request our opinion on the various questions of law which, as alleged, they have been prevented from proposing in the usual way. The petition, at their instance, has been delivered to us by the recording clerk of the house of representatives.
The facts and form of the present petition, so far as we are informed, are without precedent in this state. At the outset we are confronted with this important inquiry: Are we authorized and required by the constitution to give our opinion on the presentation and representations of this *Page 53 
petition? It is evidently intended to be a request for an advisory opinion. When, as in the present instance, our opinion would be merely advisory, the request therefor must be made in accordance with sec. 2 of article XII of the amendments to the constitution of this state, which reads as follows: "The judges of the supreme court shall give their written opinion upon any question of law whenever requested by the governor or by either house of the general assembly."
This constitutional provision imposes, in a proper case, a duty upon the judges of this court to respond. It likewise guarantees a right to the house of representatives which cannot be denied by anyone without a serious breach of the constitution.
According to well-established principles, the house of representatives usually transacts its business by a majority vote of a quorum of its members in meeting assembled. Therefore a majority of all the elected members of the house are entitled to function in this regard. In the present instance, we shall be bound to perform our duty, however delicate it may be, if the petition is construed to be the action of the house within the terms of the above constitutional provision.
Does this petition meet these requirements? The only request which has been made to us at this time for our opinion in this matter is by this petition, purporting to be signed and sworn to by a majority of the members of the house of representatives. It cannot come within the meaning of the above section of the constitution unless it is a request by that house. The request appears from the petition to have been made, not by the house of representatives in meeting assembled, and as a result of any vote that was taken and passed by said house in the usual manner, authorizing the presentation of such petition to us and making, or authorizing the making of, any request for our opinion on the questions set forth therein. It rather appears to be a request by the majority of the members *Page 54 
thereof who allege that they have been prevented from acting in the customary manner by the arbitrary and unconstitutional rulings of the presiding officer of the house. Although a majority of the members of said house have signed and sworn to the petition, it does not appear therefrom to be the formal and collective action by the house, or by a majority thereof assembled in any meeting made necessary by the alleged unconstitutional action of the presiding officer of the house. It would appear from the petition that the majority attempted, after a fashion, to act in the latter mode but in fact did not do so.
We are not unmindful of the generally accepted principle of the law of legislative assemblies that the house means a majority of the house. That principle is also the constitutional law of this state. (Art IV, sec. 6.) Generally, no business of any kind can legally be performed by any number less than a majority, except to adjourn or compel the attendance of absent members. In other words, majority rule is firmly imbedded in our fundamental law and governs the house of representatives.
The presiding officer of that house is subject to that law and must be governed by it. He is not a constitutional officer of the state, elected at large, but is one of the one hundred representatives, and holds office as such presiding officer by virtue of a vote of the majority of his colleagues. He is the servant of the house and not its master. He is indeed clothed with authority to preserve order in the house and his decisions, within the law and unappealed, must be respected and obeyed; but he should be solicitous not to violate the law himself and thereby forfeit the right to such respect and obedience.
In this connection it is pertinent to point out the provisions of sec. 8 of art. IV, of our constitution, which provides: "Each house shall keep a journal of its proceedings. The yeas and nays of the members of either house shall, at the desire of one-fifth of those present be entered on the journal." This mandatory provision of the constitution *Page 55 
requires a roll call, and a recording of the vote of the members of the house, when proper and timely request is made therefor. It is a right that neither the house nor any member thereof, whatever position he may occupy in its organization, may disregard or wilfully nullify.
This provision is a limitation on the power of the house, in the conduct of its affairs, made by the people themselves and primarily intended for their protection and interest. It also operates as a check or restraint upon majorities and minorities alike, who might be willing to avoid the requirements of this constitutional safeguard. The people, in express and unmistakable language, have reserved to themselves the right to be informed, by means of a permanent and public record, of the actions of their elected representatives, on matters affecting the life, liberty and property of the people under the law.
If, as the petition alleges, the rights of the people, as represented by a majority of the house, have been violated, or denied to them, by the action of the presiding officer of the house, we prefer to think that such action has resulted from a misconception of his duties under the constitution and of the scope and power of his office. We cannot believe that, when properly informed of the limitations upon his power and of the considerations that make it his duty to permit the majority to transact the business of the house in an orderly and constitutional manner, he will fail to accord to the majority the right, which is preserved to them in the constitution, to obtain roll call votes.
We have neither the right nor the inclination to seek to control the action of a co-ordinate branch of the government. No one of the three co-ordinate branches of the government should interfere with the other branches in the exercise of their rightful prerogatives. This court has consistently and with great care declined to encroach upon the powers granted by the constitution to the legislature, which alone is responsible under that constitution to the people for any failure to perform its duty. *Page 56 
However, the presence of this petition, wherein a majority of the members of the house of representatives, under oath, allege facts which tend to show a nullification of the rights of the majority and of the people under the constitution, cannot fail to receive our attention. Conceivably a persistence in a course of conduct which would bring about enactment of legislation, in violation of the constitutional rights of the majority and of the people, might so affect any legislation, so enacted, as to taint it with the charge of unconstitutionality, whenever it might be questioned in a litigated case affecting private rights or the rights of the public.
We therefore feel that it is appropriate to commend to the attention of the members of the house, the words of the supreme court of Illinois in the case of The People v. Bissell,19 Ill. 229, as to the necessity of proceeding strictly in accordance with the constitution. The court said in that case, among other things, "To the judiciary is confided the power and the duty of interpreting the laws and the constitution whenever they are judicially presented for consideration. Hence it becomes our duty to determine what is the meaning of the laws passed by the legislature, and, also, whether those laws are such as the legislature was authorized by the constitution to pass. . . . Notwithstanding all this, when carefully considered, it will be seen that each department, within its proper constitutional sphere, acts independently of both the others, and restraint is only placed upon it when such sphere is actually transcended, or express authority is given by the constitution, for restraint or control, by another department. . . . But it is only when thus called upon, in some form known to the law, to give effect to such acts of the other departments, that the judiciary can determine whether such acts were done in the exercise of a constitutional power. In no other way, nor in any other case, can this department construe the constitution for, or exercise any *Page 57 
control over, any other department. . . . It results, therefore, from this philosophical arrangement of our governmental system, that the control which the judicial department exercises over the others, is of a restraining, and not of a compulsory, power. But this is only practically, and not literally so. We may not enjoin the others from doing an unconstitutional act, but by refusing to give effect to such act, or relieving against it, when properly and judicially applied to for that purpose, we may restrain them. We cannot restrain . . . issuing the bonds of the state contrary to law, but when the question is properly presented before us, we can declare such bonds void. . . . But we have no power to compel either of the other departments of the government to perform any duty which the constitution or the law may impose upon them, no matter how palpable such duty may be, any more than either of those departments may compel us to perform our duties."
This statement of the proper functions of the judicial department of a state government fully applies to us, except that we are required also to give advisory opinions, when requested in accordance with the constitution of this State. But before giving such an opinion we must be assured that we have been thus requested.
Because the petitioners, although constituting a majority of the house, have not in this matter acted as the house, in accordance with sec. 2 of article XII of the amendments to our constitution, and because we feel that the presiding officer, if he has acted as the petition alleges, has misconceived his duty toward the majority and will not, when informed, persist in denying to them any of their constitutional rights, we are of the opinion that we are not authorized and required by the constitution to give our advisory opinion as requested. We are bound, therefore, by the constitution and upon the facts as presented to respectfully decline to entertain the petition, or to render, *Page 58 
at this time, any advisory opinion on the questions of law therein propounded.
 EDMUND W. FLYNN, WILLIAM W. MOSS, ANTONIO A. CAPOTOSTO, HUGH B. BAKER, FRANCIS B. CONDON.