THE PEOPLE of the State of Illinois *ex relatione* ANDREW AKIN, JOHN KING, jr., and EPHRAIM WARD, *v.* JOEL A. MATTESON, Governor of the State of Illinois, and ALEXANDER STARNE, Secretary of State.

### APPLICATION FOR MANDAMUS.

In contested elections, the intention of the voters in casting their ballots should control; and effect must be given to that intention.

In this State, "police magistrates" and "police justices" are equally within the meaning of the constitution, and the intention of the law, passed for the better government of towns and cities, approved February 28th, 1854; and votes given for persons to fill those offices, under either designation, should be counted and returned in favor of the persons for whom they may have been cast.

The right of a party to exercise an office, should be determined by quo warranto.

THIS was an application for a peremptory mandamus, founded upon the following agreed case :

That at a regular election for city officers, held in the city of Chicago, in the county of Cook, in the State of Illinois, on the 6th day of March (first Tuesday), A. D. 1855, an election was also held for the purpose of electing three police magistrates, under and by virtue of the provisions of an act, entitled "An act for the better government of towns and cities, and to amend the charters thereof," approved February 28th, 1854.

That at such election, the votes were cast as follows: For "Police Justices"—Andrew Akin, 3158; John King, jr., 3140; Henry Magee, 2675; Ephraim Ward, 3154; William H. Stickney, 2757; F. A. Howe, 2722; that the votes, so given for said Akin, King and Ward, were those of a majority of the legal voters of said city voting at said election.

Votes were also cast at said election, as follows: "Magistrates" — Calvin D'Wolf, 13 votes; Nathaniel Allen, 2 votes; William H. Stickney, 2 votes.

"Police Magistrates of the city of Chicago" — William H. Stickney, 10 votes; Calvin D'Wolf, 10 votes; Nathaniel Allen, 10 votes.

If the votes cast for "Police Justices" are counted as properly given, then the relators are duly elected, and entitled to commissions under the aforesaid act.

It is admitted that said election was held, and said votes cast, under the provisions of said act; it being, however, contended that the ballots having been for "Police Justices," and not "Police Magistrates" (the term used in the act), said votes are illegal, and should not be counted. Now, it is hereby agreed to submit the question to the Supreme Court aforesaid, to be decided in the same way as if the application had been made in due form, the said Joel A. Matteson and the said Alexander Starne waiving the issuing of a writ and entering their appearance; also waiving all questions of form, either in relation to the mode of proceeding or otherwise. If the Supreme Court shall be of opinion that the votes given for "Police Justices" as aforesaid are not illegal, for the reasons above stated, then they are to decide in favor of the relators, and a writ of peremptory mandamus may be issued. This agreement is to be deemed and taken for and have the same effect as a petition, writ and return thereto, and as if all the regular proceedings and steps had been taken to obtain a peremptory mandamus. It is further agreed, as part of this case, that the relators have severally complied with all the requisites of the law to entitle each of them to a commission, if legally elected. It is likewise agreed that commissions were issued March 14th, 1855, to Calvin D'Wolf, Wm. H. Stickney and Nathan Allen, as "Police Magistrates" of the city of Chicago, and that they have qualified and entered upon the discharge of the duties of said offices. And the commissions so issued to them were based upon the return of the city clerk, herein above mentioned.

STUART and EDWARDS, for Relators.

W. T. BURGESS, for Respondents.

CATON, J. The statute referred to in the agreed case, and under which the election was held, provides for the election of "Police Magistrates." This court, in the case of Welsh on habeas corpus, decided that that law was passed under that provision of the constitution which authorized the legislature to pro-

vide for the election of justices of the peace; so that, although the law designates them under the generic term of magistrates, yet the strict constitutional name of the officer is "justice of the peace." This term is not used in the ordinance ordering the election, but that follows the statute; and so do the ten votes given for Stickney and the two others, to whom commissions were issued, while over three thousand votes were given for the relators for "police justices;" and we are asked by them and the executive to decide whether those votes should be counted for the relators, for the office to be filled at that election. Upon this point we cannot for a moment doubt.

In election contests, as in other cases, the question to be determined depends upon facts to be ascertained; and here we are simply called upon to determine, from the evidence before us, the simple fact of the intention of the voters who cast their votes. Did they intend to vote for the relators, to fill the offices for which this election was ordered? No rational mind can doubt upon this simple question of fact, as to the purposes for which these votes were cast. That is so palpable, that we shall not attempt its discussion. And yet the law is well settled that the court must be governed by the facts thus found, although there may have been some technical omission or informality in the wording of the vote which is cast. The question is: does the informality leave the intention of the voters doubtful? In this case, we think there is no doubt. The votes cast for the relators designate the office with as much technical precision, as fixed by the constitution, as do those given for the three who are said to have been commissioned, and even more so, although the latter follow the statute more closely. In construing this statute in the case above referred to, we sought to get at the intention of the legislature, when the words *police* magistrates were used; and, on that question of fact, we had no doubt but that justices of the peace were intended, and so held; that the legislature had a right to pass the law under that clause of the constitution. The same rule applies, when we ascertain the intention of the voter. When we are satisfied on that point, we are bound to give effect to such intention.

It was suggested at the bar, on behalf of those who received the commissions under this election, that mandamus will not lie, to admit the relators to an office which is already filled. We recognize the rule as unquestioned, that, ordinarily at least, the court will not, by mandamus, turn out one officer and admit another in his place. This we do not propose to do. We have nothing to do with those parties, who are not now before us. This decision does not affect their rights to their offices, one way or the other. If they were holding their offices rightfully be-

fore, they will do so still. And if they had no legal right to the offices before, but were merely holding by color of office, this decision makes them no less officers *de jure*. Their right to the offices can be determined directly by *quo warranto*.

The writ must issue as stipulated.

*Mandamus awarded.*