THE PEOPLE *ex rel.* D. D. Donahue, Petitioner, *vs.* CHARLES S. DENEEN *et al.* Respondents.

*Opinion filed December 17, 1912.*

1. ELECTIONS—*organization of senatorial committee thirty days after election is not mandatory.* Section 5 of the Legislative Primary law, providing that senatorial committeemen shall meet and organize within thirty days after their election, is not mandatory, and their failure to meet and organize until after the thirty days have expired does not invalidate their title to their offices nor their acts after such organization.

2. SAME—*when a resolution of a senatorial committee is sufficiently certified and attested.* A resolution adopted by a senatorial committee fixing the number of candidates for member of the General Assembly which shall be nominated by a political party, is sufficiently certified and attested where it is signed by the chairman and secretary of the committee, though the word "attest" or "witness" is not used in connection with the secretary's name.

3. SAME—*what objection to certificate of senatorial committee is without merit.* The fact that the certificate of the senatorial committee filed with the Secretary of State recites that "the following resolution was adopted," instead of saying that it was a copy of the resolution adopted, does not furnish a valid objection to the certificate.

4. SAME—*fact that certificate is addressed to the Secretary of State is not material.* The fact that the certificate of the resolution of a senatorial committee is addressed to the Secretary of

State instead of to the State primary canvassing board is not material, as the law does not require it to be addressed to any one but requires it to be filed in the office of the Secretary of State.

5. SAME—*when mandamus will not issue to compel canvassing board to declare petitioner a nominee.* Where a senatorial committee has, by resolution, fixed the number of candidates to be nominated by a political party for the office of member of the General Assembly, and the certified resolution has been filed with the Secretary of State as required by law, *mandamus* will not issue to compel the State primary canvassing board to declare the petitioner a nominee in disregard of such resolution. (*People* v. *Deneen,* 247 Ill. 289, followed.)

ORIGINAL petition for *mandamus.*

D. D. DONAHUE, for petitioner.

W. H. STEAD, Attorney General, and CHARLES E. WOODWARD, (GEORGE B. GILLESPIE, and HUGH GRAHAM, of counsel,) for respondents.

Per CURIAM: The People of the State of Illinois, on the relation of D. D. Donahue, filed a petition in this court against the Governor and other State officers, constituting the State primary canvassing board, for a writ of *mandamus* commanding said board to issue certificates of nomination to relator and Jacob Martens as candidates of the democratic party for representative in the General Assembly for the twenty-sixth senatorial district. The petition alleges that relator, Jacob Martens, Frank Gillespie, F. W. Coleman and Thomas Raycraft were candidates at the primary election April 9, 1912, for nomination on the democratic ticket for representative in the General Assembly; that relator, Gillespie and Martens received the highest number of votes at said primary, Gillespie receiving 3645½ votes, relator 3357 votes and Martens 1104½ votes. The State primary canvassing board issued but one certificate of nomination for the office of representative on the democratic ticket for the twenty-sixth senatorial district, and that

certificate was issued to Frank Gillespie, the candidate who received the highest number of votes. The reason said canvassing board issued a certificate of nomination to but one candidate was, that there was filed in the office of the Secretary of State on February 14, 1912, the following certificate:

*"To James A. Rose, Secretary of State:*

"This is to certify pursuant to a call the senatorial committee of the twenty-sixth senatorial district of Illinois met at the office of Wight & Alexander, 230 Unity building, Bloomington, Ill., on the 12th day of February, 1912. The entire committee, consisting of C. S. Schneider, Paxton, Ford county, Illinois, H. J. Thompson, Arrowsmith, McLean county, Illinois, and John Alexander, of Bloomington, McLean county, Illinois, being present. The following resolution was introduced, discussed and adopted by the committee unanimously:

"Be it resolved by the senatorial committee of the twenty-sixth senatorial district of the State of Illinois, representing the democratic party, that one candidate shall be nominated by the democratic party for representative in the General Assembly for the twenty-sixth senatorial district of the State of Illinois at the primary election to be held on the 9th day of April, A. D. 1912.

"Dated at Bloomington, Ill., this 12th day of February, A. D. 1912.

JOHN ALEXANDER, *Chairman.*
H. J. THOMPSON, *Secretary."*

Copies of the resolution were also filed at the same time in the offices of the county clerks of McLean and Ford counties, the two counties composing the twenty-sixth senatorial district.

Section 11 of the Primary Election law of 1910, providing for the nomination of candidates for members of the General Assembly, is, in part, as follows: "At least thirty-three (33) days prior to the date of the April primary the senatorial committee of each political party shall meet and by resolution, fix and determine the number of candidates to be nominated by their party at the primary for representative in the General Assembly. A copy of said resolution, duly certified by the chairman and attested by the secretary of the committee, shall, within five days there-

after, be filed in the office of the Secretary of State, and in the office of the county clerk of each county in the sena-torial district." (Hurd's Stat. p. 1098.) Under this pro-vision of the statute and the certificate and resolution above mentioned the said primary canvassing board refused to proclaim relator and Martens nominees of the democratic party for said office or to issue certificates thereof, but pro-claimed the nomination of Gillespie, only, and issued a cer-tificate accordingly.

The petition alleges that John Alexander and H. J. Thompson, of McLean county, who claimed to have been elected senatorial committeemen at the primary election pre-ceding the primary of April 9, 1912, and C. S. Schneider, of Ford county, who claimed to have been elected senato-rial committeeman, were not declared elected; that the re-turns were not certified to, and that said Alexander, Thomp-son and Schneider never received certificates of election from the county canvassing board. The petition further alleges that the said senatorial committeemen did not meet within thirty days after the primary election at which they claimed to have been elected and organize and elect a chair-man and secretary; that the first meeting of the committee was on the 12th day of February, 1912, and for that rea-son, the petition alleges, the committee had no power to adopt the resolution and make the certificate filed in the office of the Secretary of State, wherefore said paper is in-valid. The petition further alleges that the resolution was not attested by the secretary of the committee, as required by law, and that the resolution does not purport to be a copy of the resolution adopted by the committee but pur-ports to be an original resolution. For these reasons it is also claimed the resolution was invalid. It is further al-leged that the number of candidates to be nominated was not fixed and determined by the resolution; that the certifi-cate of the committee was addressed to the Secretary of State when it should have been addressed to the State pri-

mary canvassing board, and for that reason it is claimed said board had no authority to recognize it. Respondents answered the petition, raising only issues of law, except as to the averments of the petition as to the election of the senatorial committeemen. The answer averred that the men whose names were signed to the certificate and resolution were voted for at the primary election on September 15, 1910, each receiving the highest number of votes cast for anyone for that position; that the returns of said election were duly made, canvassed and certificates of election issued to them, respectively. It is admitted there was no organization of the committee within thirty days after the election. The cause was heard on a demurrer of relator to the answer at the October term of this court, and after oral argument on both sides and a consideration of the case by the court, the judgment of the court denying the writ was announced by the chief justice, with the statement that an opinion would be filed later.

Upon the contention that the persons who signed the certificate and resolution were not elected senatorial committeemen, the allegations of the answer, if well pleaded, are admitted by the demurrer to be true. We think the answer in that respect was sufficient, and if the relator had desired to contest the averments as to the election of the committeemen he should have joined issue upon the facts. As the case was presented for our decision it is to be treated as if Alexander, Thompson and Schneider were conceded to have been legally elected senatorial committeemen.

Section 5 of the Legislative Primary act provides for the election of senatorial committeemen, and provides that within thirty days after its election the committee shall meet and organize by electing one of its number chairman, and from its own number, or otherwise, such other officers as the committee may deem necessary or expedient. It is admitted that the committee did not meet and organize within thirty days. We do not regard the direction that

the senatorial committee meet and organize within thirty days after its election as mandatory. It would, of course, have been the correct and proper thing for the committee to have done, but the failure to do so could not, upon any reasonable ground we are aware of, be held to have rendered invalid either the title of the committeemen to their offices or their acts at a meeting after organization more than thirty days subsequent to their election.

It is also contended that the resolution was invalid because not attested by the secretary of the committee. The law requires a copy of the resolution to be duly certified by the chairman and attested by the secretary of the committee. The certificate filed in the office of the Secretary of State, embodying the resolution upon which the respondents acted, was signed, "John Alexander, Chairman, H. J. Thompson, Secretary." We think this fully meets the requirement of the statute that the resolution be certified by the chairman and attested by the secretary. The failure to write the word "attest" or "witness" in connection with the secretary's name could not invalidate it as a proper attestation.

It is also claimed the resolution certified is the original and not a copy, as the statute requires. It is true, the certificate reads that "the following resolution was adopted," instead of saying it was a copy of the resolution adopted at the meeting of the committee, but we think this objection is without merit. Neither do we think there is any valid basis for the claim that the resolution does not fix the number of candidates to be nominated.

It is also insisted the certified resolution filed with the Secretary of State is invalid because it was addressed to the Secretary of State and not to the State primary canvassing board. We think the address is immaterial. The law does not require it to be addressed to anyone but requires it to be filed in the office of the Secretary of State. This was done, and it was for the guidance of the State

board of canvassers in making proclamation and issuing certificates of nominations as fully as if it had been addressed to the State board of canvassers.

Finally, it is contended that as three candidates were voted for by the electors at such primary election, the resolution fixing the number to be nominated at one was invalid. If the resolution in such case is invalid it must be because the law authorizing the senatorial committee to fix and determine the number of candidates to be nominated by any political party is invalid. This question was presented to us in *People* v. *Deneen,* 247 Ill. 289, where we were asked to issue a writ of *mandamus* against the State board of canvassers directing the board to certify to the nomination of the relator, who had been a candidate for nomination for the General Assembly, and in whose senatorial district the committee had adopted and filed a resolution determining on the nomination of but one candidate for representative in that district. The relator in that case not having received the highest number of votes cast for candidates for that office, sought to compel the State primary canvassing board to certify his name as one of the nominees of his party for the district in which he was a candidate. The question was discussed in three separate opinions, and it is not necessary to again enter into its discussion. A majority of the court were of the opinion the issuance of the writ was not authorized, although they differed in the reasons for that conclusion. Unless we were convinced to the contrary, the same reasons which impelled us to deny the writ in that case must govern us in denying it in this case. We are not so convinced, and the writ is denied.

*Writ denied.*