THE PEOPLE *ex rel.* George W. Hill, Petitioner, *vs.*
CHARLES S. DENEEN *et al.* Respondents.

*Opinion filed December 17, 1912.*

ELECTIONS—*county court has no power to hear contest of primary election for representative.* Under the provisions of the two Primary acts of 1910 the county court is without jurisdiction to hear a contest of a primary election for representative in the General Assembly, but such jurisdiction is in the circuit court.

ORIGINAL petition for *mandamus.*

W. F. SCOTT, for petitioner.

W. H. STEAD, Attorney General, and WILSON & WALI, for respondents.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an original proceeding in this court for a writ of *mandamus.* The petition alleges that the relator, George W. Hill, is a citizen and resident within the territory forming the fifty-first senatorial district of Illinois; that more than thirty-three days before the primary election was held, April 9, 1912, the senatorial committee of the republican party in and for said district met and determined that only two candidates for representative in the General Assembly should be nominated by the republican party in said district at said primary election, which determination was evidenced by a resolution adopted, certified and filed in accordance with the provisions of the Primary Election law for the nomination of candidates for representative in the General Assembly. The petition alleges that there were three candidates on the primary ballot for nomination to the office of representative in the General Assembly in the said fifty-first senatorial district by the republican party, viz., the petitioner, George B. Baker and Elwood Barker. The petition alleges that according to the returns certified to the Secre-

tary of State by the canvassing boards of the respective counties comprising the fifty-first senatorial district the total vote cast in said district at said primary election for the nomination of petitioner was 7189 votes, of Barker 7205½ votes and of Baker 10,021½ votes  According to these returns Barker's majority over the petitioner was 16½ votes. Petitioner alleges that before the returns were sent to the Secretary of State he learned that in two precincts of Hamilton county, where only one candidate was voted for for representative and the ballot was not otherwise marked for that office, the judges of election in said precincts counted the ballot as one vote, only, for such candidate.  The petitioner thereupon gave notice to Barker, the county canvassing board of Hamilton county and the State canvassing board that he intended to contest the nomination of said Barker "in the said precinct of Beaver creek and in Flannigan precinct No. 2, in said county of Hamilton, in the county court of said county," and on the fifteenth day of April, 1912, filed his petition for said contest in the county court of said county. The contest was heard in the county court in vacation, April 18.  The ballots were opened and counted, and the county court found and decreed that Baker received 24 votes in said precincts, Barker 36 and petitioner 117.  In accordance with the decree of the county court the county canvassing board of Hamilton county re-convened on April 19 and corrected the returns as directed by the order and decree.  As corrected the returns showed the petitioner received in Hamilton county 1878½ votes instead of 1806½ votes, as shown by the original canvass.  These figures changed the total result in the district and gave Hill a majority over Barker for the nomination.  Corrected returns and tabulation of the vote of Hamilton county in accordance with the directions made under the decree of the county court were sent to the Secretary of State, at Springfield.  The petition alleges that the State canvassing board refused to consider the corrected returns from Hamilton

county, but upon the basis of the original canvass and re-
turns declared Baker and Barker the nominees of the repub-
lican party for representative in the General Assembly from
the fifty-first senatorial district to be voted for at the gen-
eral election November 5, 1912. The petition prays for a
writ of *mandamus* directing the State canvassing board to
declare petitioner, instead of Barker, as one of the republi-
can nominees for representative and to file a certificate to
that effect in the Secretary of State's office; that the Sec-
retary of State be commanded to issue to petitioner a cer-
tificate of nomination, and to certify to the county clerks of
said district the name of petitioner as one of said nominees
in accordance with the provisions of the Primary Election
law, and that Barker be commanded to deliver up to the
Secretary of State the certificate of nomination heretofore
issued to him. The cause was heard on issues of law raised
by a demurrer to the petition. The case was decided during
the October term and an oral announcement made denying
the writ.

While other questions are raised by the demurrer and
discussed in the briefs, the question raised as to the juris-
diction of the county court is decisive of this case. Two
acts governing the nominations of public officers by primary
elections were passed by the legislature in special session in
1910. One of them relates to the nomination of candidates
for other than senatorial offices, and contains express provi-
sions for the contest of nominations of candidates at the
primary. That act contains eighty sections. Another act
passed at the same special session relates only to the nomi-
nation of candidates for senator and representatives in the
General Assembly. It contains but fourteen sections. No
express provision is found in that act relating to contests of
nominations, except that the first clause of section 13 reads:
"Except as herein otherwise expressly provided, each, every
and all of the provisions of any act relating to the holding
of primary elections by political parties, passed by this ex-

traordinary session of the General Assembly, and acts here-
after passed amendatory thereof, shall, so far as the same
may be applicable, apply to and govern primary elections
held under the provisions of this act." (Laws of 1910,—
Special Sess.—p. 81.)

Section 62 of what may be called the general act relat-
ing to nominations by primary elections provides: "Any
candidate whose name appears upon the primary ballot of
any political party in any precinct may contest the election
of the candidates nominated by his political party upon the
face of the returns, if he so desires,  *  *  *  by filing with
the clerk of the county court, except in the case of candi-
dates for the nomination for State, congressional and sena-
torial offices and for the office of county judge, a petition in
writing, setting forth the grounds of contest.  *  *  *  In
the case of a contest for the nomination for State and con-
gressional offices and for the office of county judge, said
petition shall be filed in the office of the clerk of the circuit
court." This section confers the right upon "any candidate
whose name appears upon the primary ballot of any politi-
cal party" to contest the nomination of opposing candidates
of his political party. The county court is given jurisdic-
tion to hear contests for the nomination of all candidates
except candidates for State, congressional and senatorial of-
fices and the office of county judge. The evident purpose
of the legislature was to give jurisdiction to the circuit court
to contest nominations for those offices. Contests as to
those offices were expressly excluded from the jurisdiction
of the county court. Evidently by accident, senatorial of-
fices were not expressly mentioned with those named as to
which the circuit court should have jurisdiction to hear con-
tests. We are of opinion that this accidental omission is
so apparent, and the first part of the section is so general
and positive that any candidate whose name appears upon
the primary ballot of any political party may contest the
nomination of an opposing candidate, that it must be held

a candidate for representative in the General Assembly has the right to contest the nomination of an opposing candidate. If such right exists, the jurisdiction to hear the contest is in the circuit court. The contest cannot be heard by the county court, for the statute expressly denies jurisdiction to that court to hear contests for the nominations for senatorial offices. In our view, contests for nominations for those offices must be in the circuit court, but whether we are correct in this view or not, it is certain the county court of Hamilton county had no jurisdiction to hear the contest. Its decree, therefore, was void and was properly disregarded by the State canvassing board.      *Writ denied.*