THE PEOPLE ex rel. George R. Bruce, Petitioner, vs. ED-
 WARD F. DUNNE, Governor, et al. Defendants.—THE
 PEOPLE ex rel. James H. Felts, Petitioner, vs. EDWARD
 F. DUNNE, Governor, et al. Defendants.

*Opinion filed April 19, 1913.*

1. MANDAMUS—*purpose of writ of mandamus.* The purpose of
the writ of *mandamus* is to compel the performance of a ministerial
duty which one charged with such duty has refused to perform.

2. SAME—*writ of mandamus confers no new authority to act.*
As the writ of *mandamus* only issues to compel a party to act when
it was his duty to act without the writ, such writ confers upon the
party against whom it is issued no new authority to act.

3. SAME—*writ only issues to compel action by the unwilling.*
To justify the issuing of a writ of *mandamus* there must be a re-
fusal to act, and in case private rights are involved the refusal
must follow a demand, and hence *mandamus* will not issue to com-
pel the doing of an act which the person sought to be coerced ad-
mits upon the record he is willing to do without coercion.

4. SAME—*writ will not issue where it would create public dis-
order and confusion.* The writ of *mandamus,* which is awarded in
the discretion of the court, will not be issued where its effect is
to create public disorder and confusion.

5. SAME—*the courts cannot compel the Governor to perform a
duty imposed upon him by his office.* Article 3 of the constitution,
which divides the government of the State into three distinct de-
partments, contemplates that neither department shall coerce the
other, and hence the judicial department is without jurisdiction to
award a writ of *mandamus* to compel the Governor to perform a
duty, either ministerial or discretionary, imposed upon him by his
office. (*People* v. *Bissell,* 19 Ill. 229, followed.)

6. CONSTITUTIONAL LAW—*interpretation of article 3 of consti-
tution applies to each department of government.* Article 3 of the
constitution includes each of the three departments of government
in its prohibition against one department exercising the functions
of the other, and the interpretation of such article as to one de-
partment applies with equal force to each of the others.

7. SAME—*the constitution is the only law made by the people.*
The only law made by the people is the constitution, enacted by
them, under their original and sovereign power, as the fundamental
law, wherein they have granted powers to and prescribed limits for
each one of the several departments of government.

8. SAME—*it is the province of the judicial department to determine whether constitution has been disregarded.* The judicial department has no power to compel the legislature to enact laws nor can it pass upon the wisdom of laws enacted, but it is its duty, when called upon in some form known to the law, to determine whether laws enacted by the legislature disregard the limits imposed by the constitution, which is the fundamental law of the land.

9. SAME—*declaring law unconstitutional is not an interference with legislative action.* If a law enacted by the legislature is in conflict with some provision of the constitution, so that it cannot reasonably be reconciled to it, the courts cannot avoid the duty of declaring its invalidity; but the performance of such duty is in no sense an interference by the courts with legislative action.

10. ELECTIONS—*Supreme Court cannot compel State canvassing board to issue certificate of election.* The Supreme Court can not, by *mandamus,* compel the State canvassing board to issue a certificate of election even though the Governor and other members of the board are willing to submit to the jurisdiction of the court, where the effect would be to set aside the action of the former Governor and other members of the old board, who are not consenting to having their action as members of the executive department reviewed.

FARMER and COOKE, JJ., dissenting.

ORIGINAL petition for *mandamus.*

JOHN E. HOGAN, W. S. CANTRALL, and GEORGE B. GILLESPIE, (GILLESPIE & FITZGERALD, of counsel,) for petitioners.

P. J. LUCEY, Attorney General, and LESTER H. STRAWN, for defendants.

FRANK F. NOLEMAN, and JUNE C. SMITH, for George A. Miller and R. D. Kirkpatrick.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

By leave of court granted at the December term, 1912, George R. Bruce filed his petition for a peremptory writ of *mandamus* directed to Charles S. Deneen, Governor, Cor-

nelius J. Doyle, Secretary of State, James S. McCullough, Auditor, Edward E. Mitchell, Treasurer, and William H. Stead, Attorney General. The petition alleged that at the general election held in the twenty-third senatorial district in November, 1912, the petitioner was a candidate for the office of representative in the General Assembly; that the canvassing board for Cook county outside of the city of Chicago and town of Cicero, and the canvassing board for said city and town, severally canvassed the returns of said election and certified the result to the county clerk; that the county clerk prepared abstracts of the votes, showing that Joseph Strauss received 9997½ votes, the petitioner, George R. Bruce, 10,925, George A. Miller 10,778, Carl Bloomberg 9172½, J. C. Scovern 274, Christian M. Madsen 13,699 and Emil N. Zolla 17,285, and an abstract, properly certified, was forwarded to the Secretary of State; that notwithstanding the petitioner was one of the three who received the highest number of votes, as shown by said abstract, said Cornelius J. Doyle, Secretary of State, James S. McCullough, Auditor, Edward E. Mitchell, Treasurer, William H. Stead, Attorney General, and Charles S. Deneen, Governor, refused to declare the petitioner elected, and said Charles S. Deneen, Governor, refused to make proclamation that the petitioner had been duly elected a representative in the General Assembly. The prayer was for the writ, directed to Charles S. Deneen, Governor, Cornelius J. Doyle, Secretary of State, James S. McCullough, Auditor, Edward E. Mitchell, Treasurer, and William H. Stead, Attorney General, commanding them forthwith to correctly and properly canvass the abstract of votes as returned to them and to declare the petitioner elected to said office, and to cause proclamation of the result to be made and to issue a certificate of election to the petitioner.

By like leave a petition for a peremptory writ of *mandamus* was filed by James H. Felts against the same defendants, alleging that he was a candidate in the fiftieth

senatorial district, at the same election, for the office of representative in the General Assembly; that the canvassing boards of the counties composing the district canvassed the returns, and the county clerk in each county prepared an abstract of the votes cast and forwarded the same to Cornelius J. Doyle, Secretary of State; that the total votes received by the candidates, as shown by the abstracts, were as follows: George W. Crawford 17,551, the petitioner, James H. Felts, 16,281, R. D. Kirkpatrick 16,143½ and Charles Curran 17,525; that notwithstanding the petitioner was one of the three who received the highest number of votes, as shown by the abstracts, Cornelius J. Doyle, Secretary of State, James S. McCullough, Auditor, Edward E. Mitchell, Treasurer, William H. Stead, Attorney General, and Charles S. Deneen, Governor, refused to declare the petitioner elected, and that Charles S. Deneen, Governor, refused to make proclamation that the petitioner had been elected or to certify to his election. The prayer was of the same character as that of George R. Bruce.

Writs were issued, returnable on the first day of the succeeding February term. Before the return day of the writs the terms of office of the defendants had expired and the petitioners were permitted to amend the titles of their suits so as to prosecute in the name of the People, on relation of the said petitioners, respectively, and to amend their petitions by substituting for the original defendants their successors in office, Edward F. Dunne, Governor, Harry Woods, Secretary of State, James J. Brady, Auditor, William Ryan, Jr., Treasurer, and P. J. Lucey, Attorney General. The prayers were also amended so as to ask the court to require the Governor to make proclamation that the relators were duly elected and to issue certificates of election to them, instead of commanding all of the defendants to perform such acts. The defendants, who were substituted, appeared and answered the petition in each case, admitting the averments contained therein, except as

to William H. Stead, Attorney General, who, the answers averred, refused to take part in the proceedings. The answers averred that the Secretary of State, Auditor and Treasurer met as a canvassing board in the presence of the Governor, and, objection being made to the returns, heard evidence as to their correctness and found that the returns as received were erroneous, and while the returns showed the relators elected they were not correct, and therefore they refused to make proclamation that the relators had been duly elected. They further set forth in their answers their election to the offices of Governor, Secretary of State, Auditor, Treasurer and Attorney General, and submitted to the court whether the writs asked for should issue. George A. Miller and R. D. Kirkpatrick presented motions to be admitted as defendants, from which it appeared that certificates of election had been issued to them by Gov. Deneen, and counsel for the relators in each case, in the statement of the case, say that certificates of election were so issued to George A. Miller and R. D. Kirkpatrick, and that the State canvassing board went back of the abstracts of the votes and attempted to correct errors in the work of the judges of election and the county canvassing boards. The Election law provides that one of the lists of voters, with the certificate of the judges of election written thereon, and one of the tally papers, footed up, shall be directed to the Secretary of State and mailed to him, to be kept for one year. The canvassing board accepted the lists of voters and tally papers in preference to the abstracts. The cases were submitted on the petitions and answers. The questions in the two cases and the arguments of counsel in each being identical, they were heard and have been considered together.

The points which are made in the briefs and argued by counsel for the relators are, that the duties of the State canvassing board are purely ministerial; that a writ of *mandamus* may issue against the Governor to compel the per-

formance of such duties; that the State canvassing board had no right to look back of the abstracts of votes and the certificates of the county canvassing boards but should have accepted them and declared the result accordingly; and that the State canvassing board is a permanent body, and the act sought to be compelled is one which does not require a re-assembling of the board. The brief of the Attorney General for the defendants makes the following points, followed by an argument in support of them: That the State canvassing board can act only upon the certified statements of the county canvassers, and has no authority to procure corrected returns or go behind the returns or receive testimony either to sustain or invalidate them; that the duties of the canvassing board are purely ministerial, and *mandamus* will lie to compel the board to issue a certificate to the person having the greatest number of votes, as shown by the returns; that while the writ cannot issue to control the head of an executive department in the discharge of a duty involving judgment and discretion, *mandamus* may issue where the duty is merely ministerial, and that the writ will issue against the Governor and other executive officers when they have submitted to the jurisdiction of the court.

It will therefore be seen that there is entire agreement between the counsel for the relators and the Attorney General, representing the defendants, concerning the questions of law involved, and there being no controversy or difference of opinion between them respecting the law and the duty of the State canvassing board, there does not seem to be any necessity for calling into exercise the power of the court to coerce the defendants to do what they admit to be their duty under the law. The purpose of the extraordinary writ of *mandamus* is to compel the performance of a ministerial duty which one charged with the duty has refused to perform. The writ can only be issued to compel a party to act when it was his duty to act without it. It confers upon the party against whom it may be issued no

new authority, and from its very nature can confer none. (*People* v. *Gilmer*, 5 Gilm. 242; *City of Ottawa* v. *People*, 48 Ill. 233; *People* v. *Cline*, 63 id. 394.) If it is the duty of the defendants to do the acts sought to be coerced by the writ, such acts would not be any more valid or legal if done under the command of the court. The office of the writ is to compel action by the unwilling. There must be a refusal to perform the act, and if a personal right is involved a refusal must follow a demand. The writ will not issue to compel the doing of an act which the person sought to be coerced admits on the record he is willing to do without coercion. *People* v. *Dulaney*, 96 Ill. 503.

There is another inquiry that must be made and answered before we can determine whether the writs should issue, if they were necessary to compel action, and that is, whether, under the constitution, we have jurisdiction to compel the chief executive of the State to perform a duty imposed upon him by his office. Each department of the government derives its powers from the constitution, which also prescribes the limits of such powers. It declares, in article 3, that the powers of the government of this State are divided into three distinct departments,—the legislative, executive and judicial,—and no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as therein expressly directed or permitted,—and substantially the same provision was contained in the constitution of 1848. By section 6 of article 5 the supreme executive power of the government is vested in the Governor. In the great majority of jurisdictions it is held that in view of the division of the powers of government there is no power on the part of courts to enforce by *mandamus* the performance of any duty, whether discretionary or ministerial, imposed upon the chief executive by virtue of his office. (26 Cyc. 230; 6 Am. & Eng. Ency. of Law,—2d ed.— 1017.) All authorities class this State with the majority

as holding that doctrine. The independence of the judicial department and its freedom from interference by the other departments has been maintained. (*Rockhold* v. *Canton Masonic Mutual Benevolent Society*, 129 Ill. 440; *In re Day*, 181 id. 73; *Witter* v. *Cook County Comrs.* 256 id. 616.) Of course, it would be expected that the court enforcing the provision of the constitution by which the powers of government are partitioned among the several departments, for its own protection from interference would accord the same degree of independence to the other departments. We shall see with what scrupulous care this has been done.

The question whether the court has power to command the performance of executive duties arose in the early history of the State under the constitution of 1848, and was decided in *People* v. *Bissell*, 19 Ill. 229. In that case George M. Billings asked the court to order a writ of *mandamus* commanding Gov. Bissell to issue to him new bonds of the State for arrears of interest due him. Mr. Chief Justice Caton delivered the opinion of the court, and said that the case presented the distinct question whether the court would assume to itself jurisdiction to control the executive department of the government, and that it reached the very foundation principles upon which the government was based. Considering the gravity of the question, he expressed the gratification of the court that it arose in a quiet time, when there were no symptoms of jealousy felt by one department of the government toward another; when it could be considered impartially and maturely, with no danger that the judgment would be swayed by the feelings or passions of the judges. The question had deliberate consideration, and the principle declared was, that neither of the three great departments into which the government was by the constitution divided was subordinate to or might exercise any control over another, except as provided in the constitution. Illustrations were given to show that the har-

monious working of the several departments so as to accomplish one united and complete government, required, as the constitution contemplated, that each department should to a certain extent control and restrain the others, such as the power of the legislative department to make laws by which the other departments are controlled; the qualified veto power of the executive upon legislative action; the practical annulment of the judgments of the judiciary by the exercise of the pardoning power, and the power and duty of the judicial department to interpret the laws and constitution when judicially presented for consideration. It was said that from necessity and the very nature of all government there must be an authority somewhere whose duty it is to determine whether the proper constitutional sphere of a department has been transcended, and under the constitution that duty, in most cases, fell on the judicial department; that where final action upon any subject was confided to either of the other departments, there the responsibility must rest of conforming such action to the law and the constitution; that the court had no power to compel either of the other departments of the government to perform any duty which the constitution or the law might impose upon them, no matter how palpable such duty might be, any more than either of those departments might compel the court to perform its duties, and that the Governor was, and must be, as independent of the court as was the legislature or as the court was of either of them. Duties imposed by the constitution of 1848 upon the legislature to pass certain laws were mentioned, but it was said that if the legislature neglected or refused to pass them, the responsibility was with the legislature alone, and no man would think of asking the courts to compel it to do so; that the court would be powerless to compel action no matter how clearly the duty might be enjoined by the constitution; that there was no difference whether the executive act required by law be to order an election or appoint an officer

258 - 29

or issue a bond, and in either case upon the Governor alone must the necessity rest of acting or refusing to act. There had been two previous cases to which Governors had been parties, and the court said that one of them (*People* v. *Matteson,* 17 Ill. 167,) was an agreed case, made by the Governor in order that the court might express a judicial opinion upon the question upon which he was required to act, and that the court claimed no right to exercise its coercive jurisdiction over the executive. In that case there was a stipulation that the writ should issue if votes given for police justices were legal votes for police magistrates. The court said that in the other case (*Webster* v. *French,* 11 Ill. 254,) the court expressly repudiated any claim of a right to exercise any control over the Governor in the discharge of his executive functions. In the separate opinion of Mr. Justice Breese it was said that the court had no control over Gov. Bissell to compel him to perform any duty, and that in matters of public duty the court committed him to the high tribunals of his own conscience and the public judgment. The rules established by that decision as to control by the judicial department of other departments of the government have never been departed from.

The cases of *People* v. *Hatch* and *People* v. *DuBois,* 33 Ill. 9, involved an important historical event in the history of the State when Gov. Yates prorogued the General Assembly. A writ was sought against the Secretary of State in one case to compel him to make a true copy of an act, with his certificate that the same was a law by reason of the failure of the Governor to return the same within ten days after it was presented, the General Assembly being still in session; and in the other case the writ was asked to compel the Auditor of Public Accounts to issue his warrant for the *per diem* of a member of the General Assembly. The court held that the Secretary had no duty to perform until the Governor acted, but that the Governor could not

be coerced by *mandamus* to perform any duty, citing the case of *People* v. *Bissell, supra.*

In *People* v. *Yates,* 40 Ill. 126, there was a petition for an alternative writ of *mandamus* commanding the Governor and Lieutenant Governor to make return why they failed and neglected to deposit an act to incorporate the Wabash Railway Company in the office of the Secretary of State. The petition alleged that the act was passed by the General Assembly, certified by the proper officers and presented to the Governor, and that more than ten days (Sundays excepted) had elapsed and he had not returned the bill, nor had the return been prevented by an adjournment of the General Assembly. The petition presented the case of a. duty enjoined by the constitution, but the court held that the writ would not lie against the Governor for the purpose indicated in the petition, and said that the case of *People* v. *Bissell, supra,* was decisive of the motion.

In *People* v. *Palmer,* 64 Ill. 41, the Governor appeared and entered into a stipulation that the writ should issue if the court should be of the opinion that the railway was entitled to it. The writ was denied, but the court said that the voluntary stipulation by the executive relieved the court of all consideration of the question as to the authority of the court to coerce the performance of a public duty by the executive.

In *People* v. *Cullom,* 100 Ill. 472, the county judge of Ogle county had resigned his office. The Governor appointed a judge to fill the vacancy, and a petition was presented to him asking him to order a special election, claiming that he had no power to fill the vacancy because the unexpired term was more than one year. The Governor refused to call an election, and an application for a writ of *mandamus* to compel him to do so was made. The court said that in *People* v. *Bissell, supra,* it was held that one co-ordinate branch of the government had no power to

interfere and coerce the action of another, and the writ was denied.

In *People* v. *O'Toole,* 164 Ill. 344, the court stated the rule as well recognized, that where a power is given to the executive by the constitution that department is supreme and independent within its prescribed duties and powers and is not subject to control or direction by any other branch of the government, and that the duty or power committed to one branch of the government for its exercise by the constitution is not subject to interference, control or dictation by another branch.

Cases like *People* v. *Rives,* 27 Ill. 242, and *People* v. *Hilliard,* 29 id. 413, where writs were allowed against county clerks and the justices of the peace called to their assistance to canvass the votes of an election, have no relation to the question involved.

Counsel for the relators say that the duty which they sought to have performed by Gov. Deneen, and which he refused to perform, was not a duty enjoined upon him as Governor but was a duty to be performed because he was Governor, and therefore it was not the performance of an executive act. To adopt that doctrine would be to locate every act of a Governor outside of the executive department, since it is only because an individual is Governor that he can do any of the things authorized by the constitution; and in *People* v. *Cullom, supra,* the writ was sought to compel the Governor to call an election, which was a duty prescribed by statute.

Article 3 of the constitution includes in its prohibition each of the three departments of the government, and its interpretation as to one department applies with equal force to each of the others. Therefore the court, in construing the article in the case of *People* v. *Bissell, supra,* as applied to the executive department, also showed its application to the legislative department and gave illustrations of such application. It is pertinent to this inquiry to show that the

court has never departed from the construction there given with respect to either of the other departments and that there has been no encroachment by the court upon the powers granted to them. No more baseless and defenseless proposition could be put into words than to say that the court has ever arrogated to itself the authority to pass upon the wisdom or propriety of either executive or legislative acts. It has never assumed to declare laws valid or invalid because they were wise or unwise, or because they tended to advance or retard social justice, individual justice, corrective justice, or any other variety of justice. The only law made by the people is the constitution, enacted by them, under their original and sovereign power, as the fundamental law, wherein they have granted powers to and prescribed limits for each one of the several departments. It was deemed essential to the existence of the government that there should be some department authorized to construe that law, and determine, when called upon in some form known to the law, whether its limits have been disregarded. That duty rests upon the courts, and to the exercise of that function this court has always strictly limited itself. When the validity of an act of the legislative department has been in question, the constant rule has been to construe it so as to uphold its validity if it could reasonably be done, and if its construction was doubtful the doubt was resolved in favor of the law. (*People* v. *Thompson*, 155 Ill. 451; *People* v. *Hutchinson*, 172 id. 486; *City of Chicago* v. *Manhattan Cement Co.* 178 id. 372; *Arms* v. *Ayer*, 192 id. 601; *People* v. *McBride*, 234 id. 146.) The issue in such a case is between the people and their agents, and the question is whether the agents have exceeded the letter of their authority. It has been repeatedly said that the power of this court in determining the constitutionality of laws is limited to whether an act was within the scope of the powers of the legislative department, and that the discretion reposed in the legislature cannot be reviewed. The

following principles have been laid down and consistently adhered to: The legislature is the guardian of the public interest and welfare and is the sole judge of such measures as may advance the interests of the people. (*Munn* v. *People,* 69 Ill. 80.) Whether a statute is a wise one is a question with which the court has no concern. (*Moeng* v. *People,* 138 Ill. 513.) The courts cannot inquire into the motives which may have moved the legislature to enact a statute. Such motives will be presumed to be patriotic. (*People* v. *Thompson, supra.*) The courts cannot investigate the motives of the legislature, but must presume that it acted in good faith and for the best interest of the State. (*People* v. *Rose,* 203 Ill. 46.) When the legislature has acted upon a subject upon which it has power to legislate, public policy is what the statute passed by it indicates, and any change in such policy is for the legislature and not for the courts. (*People* v. *Shedd,* 241 Ill. 155.) The argument that a law is unjust must be addressed to the legislature, and the court can only pass upon its constitutionality. (*Town of Cicero* v. *Haas,* 244 Ill. 551.) If there is a defect in the law it is the province of the legislature, and not the court, to correct it. *Gersch* v. *City of Chicago,* 250 Ill. 551.

The court has never attempted to exercise any compulsory power over the legislative department. The constitution enjoins upon that department the duty to enact certain laws, such as liberal homestead and exemption laws, laws necessary for the protection of operative miners, and laws to give full effect to article 13, relating to warehouses; and the court has not only never attempted to determine whether the laws enacted for those purposes were such as were necessary or proper, but if the legislature had neglected or refused to pass any such laws no one would think for a moment of asking the court to enforce the performance of the duties so specifically enjoined upon the legislature. These are commands of the people to the legislature, but they cannot be enforced by the courts. (*Gillinwater* v.

*Mississippi and Atlantic Railroad Co.* 13 Ill. 1.)    The same
is true as to the enforcement of prohibitions against legis-
lative action.    The constitution prohibits the legislature not
only from passing local or special laws in certain enumer-
ated cases, but also in all other cases where a general law
can be made applicable, and it has been uniformly held that
the question whether a general law can be made applicable
in cases other than those enumerated is for the legislature,
alone.    (*Knopf* v. *People,* 185 Ill. 20; *City of Mt. Vernon*
v. *Evens Brick Co.* 204 id. 32; *Block* v. *City of Chicago,*
239 id. 251.)    No law has ever been held invalid because
it was local or special unless it came within one of the enu-
merated cases, although it may have been void because in
conflict with some other provision of the constitution.    If
a law is in direct conflict with some provision of the con-
stitution, so that it cannot reasonably be reconciled with it,
the court cannot avoid the duty of declaring its invalidity,
but to do so is in no sense interfering with legislative action.
It is merely giving effect to the law made directly by the
people with due deliberation and speaking their will as the
supreme law of the land.    .

It necessarily follows from uniform decisions of this
court that we have no jurisdiction to award writs against
the chief executive of the State commanding him to issue
certificates of election to the relators.    Whether the other
executive officers who were made defendants could be co-
erced by the writ to do the things asked for, according to
the view of this court as to the proper manner of canvass-
ing returns, need not be considered, since the writs would
be ineffective unless the Governor were included and re-
quired to make proclamations and issue the certificates.

It is argued that the writ may issue against the Gov-
ernor in any case where he has submitted himself to the
jurisdiction of the court.    There have been such cases, as
before noted, but that ought to be so only in a case where
there is a difference of opinion between the Governor and

the one requiring the performance of an alleged duty and an unwillingness on his part to perform the act except in accordance with the opinion of the court. The courts will not do a useless thing, and a command to an executive to do that which he is willing to do would be of that character. Moreover, in these cases the writ is sought to annul and set aside the action of the canvassing board and Gov. Deneen as illegal and to substitute a new canvass in each case and new certificates of election, and neither the Governor, who issued the certificates, nor the officers who canvassed the returns, have appeared or consented to have their action as officers of the executive department reviewed, set aside or annulled.

Another rule of law is, that the writ of *mandamus,* which is awarded in the discretion of the court, will not be issued where it would create disorder or confusion. (*Kenneally* v. *City of Chicago,* 220 Ill. 485; *People* v. *Olsen,* 215 id. 620; Merrill on Mandamus, sec. 71; *State* v. *Enloe,* 121 Tenn. 347; *State* v. *Clinton County,* 162 Ind. 580; *Board of Education* v. *Common Council,* 128 Cal. 369; *Bibb* v. *Gaston,* 146 Ala. 434; 26 Cyc. 146; 19 Am. & Eng. Ency. of Law, (2d ed.) 753; *State* v. *Comptroller,* 4 Rich. [S. C.] 185.) In the case of *People* v. *Olsen, supra,* which related to the extension of taxes, it was considered good ground for denying the writ that seventy per cent of the work of extending the taxes had been done, that new books would be required, and it would be necessary to recall all tax warrants that were in the hands of collectors and to return to many tax-payers the amounts paid by them. By the constitution the house of representatives is the judge of the election, returns and qualifications of its members, and certificates of election have been issued to George A. Miller and R. D. Kirkpatrick as members of the house, which is now in session. The awarding of the writs in these cases would result in different persons holding certificates of election to the same office, some made

by Gov. Deneen and others by Gov. Dunne, contending for seats in the house. To award the writs would create disorder and confusion, which ought to be avoided, if possible, and would result in no substantial benefit to the relators, who necessarily must submit their claims to the judgment of the house.

The writs are denied.                    *Writs denied.*

Mr. JUSTICE FARMER, dissenting:

The denial of the writ in this case is based upon three grounds: (1) That respondents do not in their answer disagree with the relators as to the duties and powers of the canvassing board under the law, and as they express no unwillingness or refusal to properly canvass the vote and declare the result as the statute requires, the writ should not be awarded; (2) that the writ would be ineffective unless issued against the Governor, and the majority opinion holds the court has no power to issue a writ of *mandamus* commanding or directing him in the discharge of any duties conferred upon him; and (3) that awarding the writ would tend to create disorder and confusion, and for that reason it should not issue.

Respondents constitute the canvassing board, but they are not the same persons who composed the board when the vote was canvassed, the result declared and certificates issued. The terms of office of the persons then composing the canvassing board expired soon after the performance of that act, and no answer was made to the petition by the persons then constituting the board but the answer was filed by respondents. They do not in their answer refuse to canvass the vote and issue the certificates in accordance with the prayer of the petition, nor do they take issue with the relators as to the law governing the canvassing board in the discharge of its duties, but the fact remains that they have refused to take the law into their own hands and again

canvass the vote, declare the result and issue certificates, and have submitted the question of their powers and duty, under the circumstances, to the determination of this court. Whatever the views of respondents may be as to the unlawfulness of the acts of the officers who preceded them as members of the canvassing board, they have chosen the orderly and lawful method of asking that their powers and duties in the premises be determined by this court in this proceeding, and by that determination they will abide, whatever it may be. This, it seems to me, is much more commendable than it would have been for respondents to have taken the law into their own hands, canvassed the vote and declared the result without any directions from a court. Because they have chosen to pursue this course instead of the arbitrary one which the opinion indicates they could have pursued, affords no justification, in my judgment, for a denial of the writ.

With the general proposition that courts have no power to control an executive officer in the discharge of his duties I agree, but that rule is subject to some qualifications. The authorities, I believe, are all in harmony upon the proposition that courts have no power to control an executive officer in the discharge of any political or discretionary duty; but certain duties may be, and often are, conferred upon the executive which are purely ministerial in character. As to whether the executive may be controlled in the discharge of such duties the authorities are not harmonious. Many States where the question has been decided have held that the chief executive of the State is subject to control by the courts in the discharge of purely ministerial duties which might as well have been conferred upon any other officer as upon the Governor, and many States have held that courts have no power to compel the performance by the Governor of any duty, recognizing no distinction between discretionary and ministerial duties. A ministerial act is defined to

be "one which a person performs under a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or exercise of his own judgment upon the propriety of the act being done." (*Flournay v. Jeffersonville*, 17 Ind. 174.) Inasmuch as the opinion of the court does not raise any question that the duties of the State canvassing board are purely ministerial, I assume that they are conceded to be such, which seems to me to be clearly the correct view. The opinion of the court does not pretend to hold that the canvassing board acted lawfully in refusing to accept the abstracts of votes certified by the county clerks in determining who was elected and entitled to certificates upon the face of the returns, and no time need be consumed for the purpose of demonstrating that the acts of the board complained of were unauthorized, contrary to the statute and illegal. Assuming, then, that the duties of respondents are purely ministerial, that their duties as such board are clearly defined by the statute and in the discharge of such duties they have no discretion whatever, may they disregard their duties and in palpable violation of the positive and plain directions of the statute from which they derive their sole power and authority, refuse to perform those duties and neither the public nor the parties affected have any remedy?

Some of the cases denying the jurisdiction of courts to award the writ of *mandamus* against the Governor of a State are based upon the theory that all his duties are executive and in the performance of them he has a right to exercise a discretion, and therefore hold that courts cannot interfere in the control of any of his acts. This subject was elaborately discussed and the conflicting authorities referred to in *Martin v. Ingham*, 38 Kan. 641, and it was there said: "If we should deduct all the cases decided upon the theory that the court was asked to control executive, political or discretionary action and not consider any of the *dicta* of such cases, and thereby leave only such cases as

necessarily included a *decision* (not *dictum*) and *decided* that the courts could not in any case control any act to be performed by the Governor, the weight of judicial authority would probably be that courts may control any mere ministerial act to be performed by the Governor." This is also the view of the author of an extensive note upon this subject to *State of Wyoming* v. *Brooks,* 6 L. R. A. (N. S.). 750, where it was held the writ would issue against the Governor to compel the performance of a ministerial duty when his judgment and discretion were not involved. In *State* v. *Thayer,* 31 Neb. 82, where the jurisdiction to award the writ of *mandamus* against the State board of canvassers, composed of the Governor, Secretary of State, Auditor, Treasurer and Attorney General, to compel the board to canvass the votes was sustained, the conflicting decisions were referred to, and it was said the weight of the argument supports the right and authority of courts to compel the performance of purely ministerial duties by the executive. Numerous other cases might be cited expressing the same view, and it seems to me that is the sound view. To say that any executive officer, whatever his title, may disregard a ministerial duty imposed upon him by a statute which specifically provides how the duty shall be performed, leaving nothing to the judgment or discretion of the officer, is to acknowledge an authority higher than the law. To say the remedy is to remit him to the "high tribunal of his own conscience and the public judgment" is a confession of weakness in the law that I cannot make.

While it may not be customary, as said in some cases, to impose ministerial duties upon the Governor, there is nothing in the nature of the office which prevents that being done, and it is well known that such duties are enjoined upon the Governor of a State. Other State officers, such as Secretary of State, Auditor, Treasurer and Attorney General, are officers of the executive department, but the legislature has charged them also with the performance of some

ministerial duties. While the court does not decide whether they are subject to control by the courts in the performance of ministerial duties, I am unable to see any difference, in principle, between such officers and the Governor in the performance of such duties. Imposing such duties upon an executive officer, whether he be Governor or some other executive officer of the State, does not transform such duties from ministerial to executive or discretionary duties. An officer charged with the performance of a purely ministerial duty by an act of the legislature containing specific directions as to how it shall be performed, leaving nothing to the judgment or discretion of the officer, is as to that duty, no matter what his title may be, a ministerial officer. Chief Justice Marshall said in *Marbury* v. *Madison,* 1 Cranch, 137: "It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a *mandamus* is to be determined."

The question of the jurisdiction of a court to award a writ of *mandamus* against the Post-master General was before the Supreme Court of the United States in *Kendall* v. *United States,* 12 Pet. 608. The court said: "The *mandamus* does not seek to direct or control the Post-master General in the discharge of any official duty partaking in any respect of an executive character, but to enforce the performance of a mere ministerial act, which neither he nor the President had any authority to deny or control. * * * There are certain political duties imposed upon many officers in the executive department the discharge of which is under the direction of the President. But it would be an alarming doctrine that Congress cannot impose upon any executive officer any duty they may think proper which is not repugnant to any rights secured and protected by the constitution, and in such cases the duty and responsibility grow out of and are subject to the control of the law and not to the direction of the President. And this is em-

phatically the case where the duty enjoined is of a mere ministerial character."

In *United States* v. *Blaine,* 139 U. S. 306, where a writ of *mandamus* was asked ·to be awarded against the Secretary of State, the court, after holding the writ could not issue against the head of an executive department to control him in the discharge of an executive duty involving the exercise of judgment or discretion, said: "When, by special statute or otherwise, a mere ministerial duty is imposed upon the executive officers of the government,—that is, a service which they are bound to perform without further question,—then, if they refuse, the *mandamus* may be issued to compel them."

I do not regard *People* v. *Bissell,* 19 Ill. 229, and other Illinois cases cited in the opinion of the court, as conclusive of the question here involved. While in those cases no reference was made to any distinction between executive and ministerial duties, it seems apparent that the court had in mind only executive duties the performance of which involved the judgment and discretion of the Governor. That this court has not heretofore thought those cases settled the question here involved is made to appear from the fact that we have recently taken jurisdiction of petitions for the writ of *mandamus* against the Governor and the other State officers constituting the State canvassing board, in cases precisely like the one under consideration. In *People* v. *Deneen,* 247 Ill. 289, relator was granted leave to file, and did file, a petition in this court asking a writ of *mandamus* against the Governor and other State officers composing the State primary canvassing board, commanding them to certify the relator's name as one of the candidates nominated by his political party for the office of representative in the General Assembly at the preceding primary, so that his name would be placed on the official ballot to be voted for at the election. Four members of the court agreed that the writ

should be denied but did not agree upon the grounds of denial. Want of jurisdiction was not suggested in either of the two opinions filed giving the reasons why a majority of the court thought the writ should not issue. Three of the justices who concur in the opinion of the court in this case filed an opinion in that case in which they stated that in their opinion the writ should have issued. If we had jurisdiction then to issue the writ against the Governor I know of no reason why we have not jurisdiction to do so now.

In *People* v. *Deneen,* 256 Ill. 436, the relator obtained leave to file, and did file, in this court a petition alleging that he had been nominated at the preceding primary election by his political party as a candidate for representative in the General Assembly, but that the State canvassing board, upon a canvass of the returns, refused to declare his nomination and issue a certificate to that effect. A writ of *mandamus* was prayed against the canvassing board commanding that said board declare petitioner nominated and that a certificate be issued. The case was considered on its merits and the writ denied, but the denial was not upon jurisdictional grounds but for reasons which will be found stated in the opinion.

In *People* v. *Deneen,* 256 Ill. 536, this court granted relator leave to file a petition for the writ of *mandamus* against the Governor and other State officers constituting the State canvassing board. The petition alleged the petitioner had been duly nominated as one of the candidates of his political party at the preceding primary election but that the canvassing board had wrongfully and unlawfully declared another the nominee. A writ of *mandamus* was prayed commanding the State board of canvassers to issue to petitioner a certificate of nomination and to certify his name to the county clerks of the counties composing his district, in accordance with the provisions of the statute.

The writ was denied, not upon jurisdictional grounds but for the reasons stated in the opinion of the court.

All three of the above cases were original proceedings begun by leave in this court. They were all considered upon their merits, and while the writ was denied in each case, the denials were based on the opinion of the court that the petitioners were not entitled, under the law, to the relief prayed, and not upon the want of jurisdiction of the court to grant the relief. It is very certain that if the petitioners had shown themselves entitled to the relief prayed, and that the canvassing board had, by its unlawful act or the failure to perform its duty as prescribed by the statute, deprived petitioners of their rights, the writ would have been ordered to issue. In the five opinions filed in the three cases no intimation will be found that the court had not jurisdiction to direct, by writ of *mandamus,* that the board, including the Governor as a member of the board, perform its duty under the statute.

But if the later cases are to be departed from and the *dicta* of the earlier cases that the courts will not assume to control the action of the executive in the performance of any duty is to be adhered to and applied to purely ministerial duties, still, under the facts of this case the relators are entitled to the writ and the court has the power to issue it under the early cases cited in the opinion of the court. In *People* v. *Bissell,* 19 Ill. 229, the court said that where, for the purpose of getting advice of this court in reference to some duty imposed upon him by law, the Governor makes an agreed case and submits to the jurisdiction of the court, the court will take jurisdiction and determine the right of the relator to the writ,—citing *People* v. *Matteson,* 17 Ill. 167, as being a case of that kind. In *People* v. *Palmer,* 64 Ill. 41, relator filed a petition in this court for a writ of *mandamus* requiring the Governor to issue to him a commission as police magistrate in and for the city of Chicago. The Governor appeared, admitted the facts al-

leged in the petition were true, and expressed a willingness to issue the commission if the court should be of opinion the relator was entitled to it. The court said this relieved it of any consideration of the question whether it had jurisdiction to award the writ against the Governor and decided the case upon its merits.

The answer of respondents in this case admits the facts alleged in the petition; alleges that since the filing of the petition the terms of office of the officers composing the board of canvassers had expired; that they had been succeeded by respondents, and that respondents submitted to this court whether or not the writ of *mandamus* should issue commanding them to forthwith canvass the abstracts of votes returned to the canvassing board by the county clerks, declare petitioners elected, cause proclamation of the result to be made and certificates to issue. The answer prayed that the court should enter such order in the premises directing them as law and justice should require. This is clearly and unmistakably a submission to the jurisdiction of the court. All question whether the Governor or the other members of the board were subject to be controlled in the performance of the duty involved was waived, and the court was invited to determine and advise respondents what their duties were under the facts alleged in the petition. The position of respondents as disclosed by the answer is, that they admit the returns have never been canvassed by the board of canvassers, the result declared and certificates issued in accordance with the requirements of the statute, but as a pretended canvass of the returns had been made by their predecessors in office they were uncertain as to what their powers and duties were under the circumstances. They therefore submitted themselves to the jurisdiction of the court for the purpose of getting its advice in reference to some duty imposed upon them by law, (*People* v. *Bissell, supra,*) and thereby "relieved the court of all consid-

258 – 30

eration of the question as to the authority of the court to coerce the performance of a public duty by the executive of the State." (*People* v. *Palmer, supra.*) If we are to accept those cases as holding that the court cannot assume to control the executive in the performance of any duty, how can we consistently disregard the exception made by them in cases where the executive voluntarily submits to the jurisdiction of the court and asks to be advised as to what his duties are? It seems to me that under the authorities relied upon by the court we should have decided the question submitted and advised the respondents what their powers and duties are, as we were requested to do.

It is also said in the opinion of the court that awarding the writ would tend to create disorder and confusion, and that it is discretionary with the court to deny it in such cases. It is said the predecessors of respondents, as members of the board of canvassers, declared George A. Miller and R. D. Kirkpatrick elected members of the house of representatives and commissions had been issued to them; that the house is now in session, and awarding the writs would result in different persons holding certificates of election to the same office, some made by Gov. Deneen and some by Gov. Dunne, contending for seats in the house. This, it is said, would create disorder and confusion and result in no substantial benefit to relators, who would necessarily be required to submit their claims to the decision of the house. This seems to me wholly insufficient to afford any justification for a denial of the writ. As previously stated, it is not denied that if the board that canvassed the returns and declared the result of the election had performed its duty in the manner required by the statute, relators would have been declared elected and given certificates. This action of the board would not have been conclusive of their election, for the house of representatives is the sole judge of the election of its own members. The canvassing board has no other power than to accept the abstracts of

votes returned by the county clerks and be governed thereby. That body has no power, in a contest between different claimants to the office of representative, to determine who is elected. That question can only be determined by the house itself. The opinion correctly states that if relators were awarded the writ and given certificates this would not be conclusive, but their right to the office they claim would have to be submitted to the house of representatives for decision. They have a right, without the writ, to contest before the house the election of the persons now holding certificates and have a decision of that body upon that question. The persons to whom the certificates have been issued, having been sworn in and admitted to membership, would hold their seats until relators had established their right and the house had decided in their favor. The procedure would be the same and would be attended with no more disorder and confusion than would be the case if relators contested the right of the sitting members to the office without having applied for or obtained certificates. If relators were entitled to certificates upon the face of the returns but were denied them and they were issued to persons not entitled to them on the face of the returns, it is no answer to say they must submit to the wrong done them because to correct the wrong in an orderly legal proceeding would tend to create disorder and confusion. The cases in which the writ of *mandamus* has been denied upon that ground are not analogous to this case. In my opinion the writ should be awarded.

Mr. JUSTICE COOKE: I concur in the dissenting opinion of Mr. Justice Farmer.